**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| GIRARD STREET INVESTMENT HOLDINGS LLC, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| PETRÓLEOS DE VENEZUELA, S.A. and PDVSA PETRÓLEO S.A., | : |
| | : |
| Defendants. | : |

Case No. 1:23-cv-10772-JSR

(Consolidated with Case No. 1:23-cv-10766-JSR)

|  |  |
|---|---|
| GIRARD STREET INVESTMENT HOLDINGS LLC, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| PDV HOLDING, INC., | : |
| | : |
| Defendant. | : |

Case No. 1:24-cv-04448-JSR

(Consolidated with Case No. 1:23-cv-10766-JSR)

## DEFENDANTS PETRÓLEOS DE VENEZUELA, S.A.'S AND PDVSA PETRÓLEO, S.A.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CONSOLIDATED AMENDED COMPLAINT

Defendants Petróleos de Venezuela, S.A. ("**PDVSA**") and PDVSA Petróleo, S.A. ("**Petróleo**," and collectively with PDVSA, "**Promissory Note Defendants**"), by and through its undersigned attorneys, hereby file their Answer to Plaintiff Girard Street Investment Holdings LLC's ("**Plaintiff**" or "**Girard Street**") Consolidated Amended Complaint.

## PROMISSORY NOTE DEFENDANTS' ORIGINAL ANSWER

The section titles and other organizational headings from the Consolidated Amended Complaint do not require a response. To the extent such section titles and other organizational

headings are construed to contain substantive allegations to which a response is required, they are hereby denied. To the extent Promissory Note Defendants use terms defined in the Consolidated Amended Complaint, such use is not an acknowledgement or admission of any characterization Plaintiff may seek to associate with any such defined term. Pursuant to Federal Rule of Civil Procedure 8(b), Promissory Note Defendants provide their specific responses to the allegations of the Consolidated Amended Complaint as follows:

## <u>NATURE OF THE ACTION</u>

1.      Against Promissory Note Defendants, this is a breach of contract action arising from the failure of PDVSA to make contractually-mandated interest and principal payments on a certain promissory note (the "**<u>Note</u>**") held by Plaintiff and issued by PDVSA pursuant to a Note Agreement, dated as of June 29, 2016 (the "**<u>Note Agreement</u>**"), and guaranteed by Petróleo which also failed to honor the guarantee or otherwise make payment to Plaintiff. To date, Promissory Note Defendants have shown no sign that they intend to comply with their obligations under the Note. To the contrary, Promissory Note Defendants are continuing to take affirmative actions to prevent Plaintiff and other creditors from enforcing their contractual rights. In light of the growing number of creditors seeking to enforce their contractual rights against Promissory Note Defendants' assets, expeditious relief from this Court is imperative.

> **<u>Answer</u>:**      Paragraph 1 contains characterizations of Plaintiff's causes of action to which no response is required. To the extent any response is required, Promissory Note Defendants deny these allegations.

2.      For its relief, Plaintiff seeks a judgment against Promissory Note Defendants in the amount of the principal and unpaid and accrued interest on the Note held by Plaintiff, as provided for in the Note Agreement, under the Note, and under New York law, including pre- and post-

judgment interest. A true and correct copy of the Note Agreement is attached as Exhibit 1. A true and correct copy of the Note is attached as Exhibit 2.

> **Answer:**    Promissory Note Defendants admit that copies of the Note Agreement and Note are attached to Plaintiff's Complaint as Exhibit 1 and Exhibit 2. Promissory Note Defendants deny all other allegations in Paragraph 2.

3.    PDVH is the alter ego and wholly-owned subsidiary of PDVSA. PDVH in turn holds 100% of the shares in Citgo Holding, Inc. ("**Citgo Holding**"), which in turn owns 100% of Citgo Petroleum Corporation ("**Citgo**"), each of which has its principal place of business in Houston, Texas.

> **Answer:**    Promissory Note Defendants admit that PDVH is wholly owned by PDVSA. Promissory Note Defendants deny that PDVH is an alter ego of PDVSA. Promissory Note Defendants admit that PDVH holds 100% of the shares of stock of CITGO Holding and that CITGO Holding owns 100% of the shares of stock of CITGO Petroleum Corporation. Promissory Note Defendants admit that PDVH, CITGO Holding, and CITGO each have a principal place of business in Houston, Texas.

4.    Plaintiff seeks to hold PDVH liable for PDVSA's liabilities to Plaintiff by piercing the corporate veil between PDVH and PDVSA, and through a turnover order directing PDVH, as PDVSA's alter ego, to deliver into this jurisdiction any and all assets necessary to satisfy the amounts owed to Plaintiff.

> **Answer:**    Paragraph 4 contains characterizations of Plaintiff's causes of action to which no response is required. To the extent any response is required, Promissory Note Defendants deny these allegations.

5.      At all relevant times, PDVH has been an alter ego of PDVSA. Among other factors, PDVSA exercised significant and extensive economic control over PDVH, using PDVH's property as its own and commingling PDVSA's and PDVH's funds. PDVH's funds are siphoned to PDVSA. PDVSA caused PDVH to transfer billions of dollars of Citgo dividends to PDVSA, which PDVSA promptly transferred to its alter ego Venezuela, leaving PDVSA and PDVH undercapitalized, unable to pay debts as they came due, and unable to make dividend payments. Indeed, at the direction of PDVSA, the profits of PDVH have been used for the benefit of the sovereign functions of the Bolivarian Republic of Venezuela ("**Venezuela**" or the "**Republic**") and not for commercial purposes. In the fall of 2016, for example, PDVH pledged 100% of its equity in Citgo Holding in two transactions, for the benefit of PDVSA and without receiving consideration. PDVSA ignored PDVH's ordinary corporate formalities; exercised close political control over PDVH, managing PDVH and having a hand in its daily affairs; and issued policies or directives that caused PDVH to act directly on PDVSA's behalf, so that PDVSA and Venezuela were the real beneficiaries of PDVH's conduct. Moreover, PDVH's officers and directors were not acting in the best interest of all of residual beneficiaries, including creditors, in part because PDVH's directors overlapped with PDVSA's board of directors and took direction from Venezuela and PDVSA.

**Answer:**      Promissory Note Defendants deny the allegations in Paragraph 5.

6.      PDVH is merely a façade for PDVSA and Venezuela's dominance, resulting in an abuse of the corporate form that perpetrates a wrong or injustice. Adhering to separate identities for PDVSA and PDVH would permit PDVSA, as the agency and instrumentality of a foreign state, to benefit from the limited liability extended to U.S.-based entities—as the Third Circuit has held, "PDVSA enjoys the benefits and protections of United States law"—while avoiding its obligations

to commercial creditors and ordinary liabilities that must be satisfied before dividends are distributed. No other remedies are practically available to Plaintiff at law or in equity to recover the debt owed to it by PDVSA other than to enforce its judgment against PDVSA's alter ego, PDVH.

> **Answer:**    Promissory Note Defendants deny the allegations in Paragraph 6.

7.    As such, Plaintiff seeks a declaration that PDVH is the alter ego of PDVSA and is jointly and severally liable for any eventual judgment entered against PDVSA in favor of Plaintiff. A turnover order requiring PDVH, an alter ego of the judgment-debtor, to bring its assets within the jurisdiction of this Court so that a writ of execution may issue against those assets is appropriate, and would prevent the inequitable result that would otherwise occur if PDVSA were permitted to hide behind the corporate form it has abused.

> **Answer:**    Paragraph 7 contains characterizations of Plaintiff's causes of action to which no response is required. To the extent any response is required, Promissory Note Defendants deny these allegations.

### THE PARTIES

8.    Plaintiff is a Limited Liability Company incorporated under the laws of the Cayman Islands, with a registered office of Maples Corporate Services Limited, PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. Plaintiff's principal place of business is in Connecticut. The sole member of Girard Street is Gramercy Venezuela Opportunity Fund II, an Exempted Company incorporated under the laws of the Cayman Islands, with its principal place of business in Connecticut.

> **Answer:**    Promissory Note Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 8.

9.      Defendant PDVSA is a corporation organized under the laws of Venezuela and is owned directly by Venezuela, which is a foreign state. PDVSA is an alter ego of Venezuela. *See OI Eur. Grp. B.V. v. Bolivarian Republic of Venez.*, 73 F.4th 157, 172 (3d Cir. 2023) ("[I]t is clear PDVSA is Venezuela's alter ego.").

> **Answer:**      Promissory Note Defendants admit that PDVSA is a corporation organized under the laws of Venezuela and is owned directly by Venezuela. Promissory Note Defendants admit that Venezuela is a foreign state. Promissory Note Defendants deny the remaining allegations of Paragraph 9.

10.      Defendant Petróleo is a corporation organized under the laws of Venezuela. Petróleo is owned directly by PDVSA and indirectly by Venezuela.

> **Answer:**      Promissory Note Defendants admit that Petróleo is a corporation organized under the laws of Venezuela and is owned by PDVSA. Promissory Note Defendants deny the remaining allegations contained in Paragraph 10.

11.      Defendant PDVH is a Delaware corporation with its principal place of business located at 1293 Eldridge Parkway, Houston, TX 77077. PDVH is a wholly owned subsidiary of PDVSA and is indirectly owned by Venezuela.

> **Answer:**      Promissory Note Defendants admit the allegations of the first sentence of Paragraph 11. Promissory Note Defendants admit that PDVH is a wholly owned subsidiary of PDVSA. Promissory Note Defendants deny the remaining allegations in Paragraph 11.

## JURISDICTION AND VENUE

12.      This Court has jurisdiction over the action against the Promissory Note Defendants

pursuant to 28 U.S.C. § 1330(a) and 28 U.S.C. § 1367(a), and over the action against PDVH

pursuant to 28 U.S.C.§ 1332(a) and 28 U.S.C. § 1367(a).

> **Answer:**     Promissory Note Defendants admit the allegations contained in Paragraph
>
> 12 with respect to Promissory Note Defendants. Promissory Note
>
> Defendants lack information and knowledge sufficient to form a belief as to
>
> the truth or falsity of the allegations concerning PDVH.

13.     PDVSA is a foreign corporation owned directly by the Republic and therefore

PDVSA is an "agency or instrumentality" of a foreign state. 28 U.S.C. § 1603(b).

> **Answer:**     Promissory Note Defendants admit the allegations contained in Paragraph
>
> 13.

14.     PDVSA has explicitly and unconditionally waived sovereign immunity under

Article IX, Section 9.15(c) of the Note Agreement with respect to any action or proceeding arising

out of or relating to the Note Agreement or the Note by holders of the Note, and is, therefore, not

entitled to immunity under 28 U.S.C. §§ 1605-07. *See* Ex. 1 at 40, Section 9.15(c) ("To the extent

that the Issuer or the Guarantor has or hereafter may acquire any immunity from jurisdiction of

any court or from any legal process, the Issuer and the Guarantor each hereby waives such

immunity and hereby agrees not to assert, by way of motion, as a defense or otherwise, in any suit,

action or proceeding the defense of sovereign immunity or any claim that it is not personally

subject to the jurisdiction of the above-named courts by reason of sovereign immunity or

otherwise, or that it is immune from any legal process (whether through service of notice,

attachment prior to judgment, attachment in aid of execution, execution or otherwise) with respect

to itself or its property or from attachment either prior to judgment or in aid of execution by reason

of sovereign immunity . . .").

> **Answer:** Promissory Note Defendants admit that the Note Agreement contains the quoted language. Promissory Note Defendants deny any allegations that are inconsistent with that language or the full terms of the Note, Note Agreement, or any other applicable writings, and deny the remaining allegations in Paragraph 14.

15. Accordingly, this Court has subject matter jurisdiction over claims against PDVSA pursuant to 28 U.S.C. § 1330(a).

> **Answer:** Paragraph 15 states conclusions or characterizations of law to which no response is required. To the extent any response is required, Promissory Note Defendants deny these allegations.

16. Petróleo is a foreign corporation that is not directly owned by a foreign state. Petróleo, therefore, is not entitled to immunity under 28 U.S.C. §§ 1605-07.

> **Answer:** Promissory Note Defendants admit that Petróleo is a Venezuelan corporation. Promissory Note Defendants deny that it is not directly owned by a foreign state as that term is defined in 28 U.S.C. § 1603(a). The remaining allegations in Paragraph 16 are conclusions or characterizations of law to which no response is required. To the extent any response is required, Promissory Note Defendants deny these allegations.

17. Pursuant to Article VI, Section 6.01 of the Note Agreement, Petróleo "absolutely, irrevocably and unconditionally" guaranteed PDVSA's payment obligations under the Note Agreement and the Notes. Ex. 1 at 1, Preamble (defining Petróleo as the Guarantor); *id.* at 28, Section 6.01. Further, pursuant to Article VI, Section 6.04, Petróleo waived "[t]o the fullest extent permitted by applicable law, . . . any defense based on or arising out of any defense of the Issuer

or the Guarantor or the unenforceability of all or any part of the Guaranteed Obligations from any cause, or the cessation from any cause of the liability of the Issuer or the Guarantor, other than the indefeasible payment in full in cash of the Guaranteed Obligations" and "irrevocably waive[d] acceptance hereof, presentment, demand, protest and, to the fullest extent permitted by law, any notice not provided for herein, as well as any requirement that at any time any action be taken by any person against any Obligated Party or any other person." *Id.* at 30, Section 6.04.

> **Answer:**   Promissory Note Defendants admit that the Note Agreement contains the quoted language. Promissory Note Defendants deny any allegations that are inconsistent with that language or the full terms of the Note, Note Agreement, or any other applicable writings, and deny the remaining allegations in Paragraph 17.

18.   Plaintiff's claim against Petróleo is so related to its claim in the action against PDVSA, which is within the Court's original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution. Accordingly, the Court has jurisdiction over Petróleo under 28 U.S.C. § 1367(a).

> **Answer:**   Paragraph 18 states conclusions or characterizations of law to which no response is required. To the extent any response is required, Promissory Note Defendants deny these allegations.

19.   In addition, this Court has personal jurisdiction over the Promissory Note Defendants because the Promissory Note Defendants explicitly consented in the Note Agreement to submit to the jurisdiction and venue of this Court with respect to any action or proceeding arising out of or relating to the Note Agreement or the Note by any holder of the Note. *See* Ex. 1 at 40, Section 9.15(a).

**Answer:**    Promissory Note Defendants admit that the Note Agreement contains Section 9.15(a). Promissory Note Defendants deny any allegations that are inconsistent with Section 9.15(a) or the full terms of the Note, Note Agreement, or any other applicable writings.

20.    This Court has subject matter jurisdiction over the action against PDVH pursuant to 28 U.S.C.§ 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and citizens of a different State or a foreign State.

**Answer:**    Paragraph 20 states conclusions or characterizations of law to which no response is required. To the extent any response is required, Promissory Note Defendants deny these allegations.

21.    In addition, Plaintiff's claim against PDVH is so related to its claim in the action against PDVSA, which is within the Court's original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution. Accordingly, the Court has supplemental jurisdiction over PDVH under 28 U.S.C. § 1367(a).

**Answer:**    Paragraph 21 states conclusions or characterizations of law to which no response is required. To the extent any response is required, Promissory Note Defendants deny these allegations.

22.    The waivers, consents, agreements, and designations of a sovereign entity may be imputed to its alter egos, including waivers of sovereign immunity and consents to jurisdiction and venue in the Southern District of New York. PDVSA's waiver and consent are therefore imputed to its alter ego PDVH, and jurisdiction is proper in this Court.

**Answer:**    Promissory Note Defendants deny the allegations in Paragraph 22.

23.     Even without applying the consent to jurisdiction that PDVH's alter ego, PDVSA, agreed to, personal jurisdiction over PDVH is also proper. PDVH moved to dismiss, *Girard Street Investment Holdings, LLC v. PDV Holding, Inc.*, No. 24-cv-4448 (S.D.N.Y.) ("**24-4448**") Dkt. No. 25, and did not raise a defense of lack of personal jurisdiction. Pursuant to Fed. R. Civ. P. 12(h), any such defense is accordingly waived.

> **Answer:**     Promissory Note Defendants deny that PDVSA is the alter ego of PDVH. The remaining allegations in Paragraph 23 are conclusions or characterizations of law to which no response is required. To the extent any response is required, Promissory Note Defendants deny these allegations.

24.     Venue is proper in this district pursuant to the agreement of the parties and 28 U.S.C. § 1391(f). The Promissory Note Defendants "irrevocably and unconditionally" submitted to the "exclusive jurisdiction of any New York State court or federal court of the United States of competent jurisdiction sitting in the County of New York, State of New York, and any appellate court from any thereof" in any action or proceeding arising out of or relating to the Note Agreement or the Notes and waived any and all defenses as to venue, as well as to an inconvenient forum. *See* Ex. 1 at 40, Sections 9.15(a)–(b). Those consents can be imputed to PDVSA's alter ego PDVH.

> **Answer:**     Promissory Note Defendants admit that the Note Agreement contains the quoted language. Promissory Note Defendants deny any allegations that are inconsistent with that language or the full terms of the Note, Note Agreement, or any other applicable writings, and deny the remaining allegations in Paragraph 24.

25.     Venue (and personal jurisdiction) is also proper in this district because a physical stock certificate for 50.1% of PDVH's equity in Citgo Holding, which is a substantial part of the property that is the subject of this action and the request for a turnover order, is held in a vault in New York.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 25.

26.     The Note Agreement, Note, and Assignment and Acceptances are all governed by New York Law. *See* Ex. 1 at 38, Section 9.07; *id.* at A-3, Exhibit A (Form of Note); and *id.* at C2-4, Annex I (Standard Terms and Conditions for Assignment and Acceptance), Section 3 (General Provisions).

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations concerning the Assignment and Acceptances in Paragraph 26. Promissory Note Defendants admit that the Note Agreement and Note contain language stating that they are governed by New York Law, but deny any allegations that are inconsistent with the full terms of the Note, Note Agreement, or any other applicable writings, and deny the remaining allegations in Paragraph 26.

27.     Promissory Note Defendants irrevocably appointed Corporation Service Company, their Process Agent, as their "agent to receive and forward any writs, process and summonses in any suit, action or proceeding brought in connection with" the Note Agreement or the Notes against PDVSA "in any court of the State of New York or any United States federal court sitting in the

County of New York, State of New York." Ex. 1 at 9, Section 1.01 (definition of "Process Agent"); *id.* at 40–41, Section 9.15(d).

> **Answer:** Promissory Note Defendants admit that the Note Agreement contains the quoted text. Promissory Note Defendants deny all allegations that are inconsistent with the language of the Note, Note Agreement, or any other applicable writings, and deny the remaining allegations of Paragraph 27.

## FACTUAL ALLEGATIONS

### I.  The Promissory Notes

#### A.  Ownership of the Notes

28.    On June 29, 2016, PDVSA, as Issuer, and Petróleo, as Guarantor, entered into the Note Agreement with Servicios Halliburton de Venezuela, S.A. ("**SHVSA**"). Pursuant to the Note Agreement, PDVSA issued a Note to SHVSA designated as a "Series 2016E" and numbered R-1. *See* Exs. 1–2. The principal amount of the Note is $200,000,123.50. The Note accrued interest at a rate of 6.5% per annum, with quarterly payments due beginning September 29, 2016 (for interest only) and September 29, 2017 (for interest and principal) and a maturity date of June 29, 2019.

> **Answer:** Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the first sentence of Paragraph 28. Promissory Note Defendants admit that the Note Agreement and Note contain the terms referenced. Promissory Note Defendants deny all allegations that are inconsistent with the language of the Note, Note Agreement, or any other applicable writings, and deny the remaining allegations of Paragraph 28.

29.    The effect of the Note Agreement was to exchange unpaid accounts receivable due to SHVSA for a Note in a principal amount equal to the aggregate unpaid balance of the receivables.

In other words, PDVSA could not fund its ordinary business operations as they became due, especially after having made such large dividend payments to the Republic in 2015 (discussed *infra*), and therefore funded its operations with debt.

    **Answer:**        Promissory Note Defendants deny the allegations in Paragraph 29.

    30.    Effective January 14, 2021, SHVSA assigned the Note to Plaintiff pursuant to the Assignment and Acceptance. A true and correct copy of the Assignment and Acceptance for Note R-1 is attached as Exhibit 3. Plaintiff received a license from the United States Department of the Treasury Office of Foreign Asset Controls ("OFAC") for this transfer. A true and correct copy of the OFAC license is attached as Exhibit 4. Pursuant to the Assignment and Acceptance, for the agreed-upon consideration (which, for the avoidance of doubt, exceeded $500,000, paid by Plaintiff in cash at the time of purchase), SHVSA irrevocably sold and assigned to Plaintiff, and Plaintiff irrevocably purchased and assumed from SHVSA, "the interest in and to all of [SHVSA]'s rights and obligations under the Note Agreement . . . ." Ex. 3 at 1.

    **Answer:**        Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 30.

    31.    On January 14, 2021, Plaintiff served, and PDVSA received, a Notice of Assignment and Resignation of Administrative Agent in both English and Spanish (the "**Assignment Notice**"). In the Assignment Notice, Plaintiff, "as current Noteholder, provide[d] notice . . . of its request of the resignation of SHVSA in its position as Administrative Agent, and agree[d] to not appoint a successor Administrative Agent, whereby Girard Street Investment Holdings LLC [would] hereafter perform all duties of the Administrative Agent under the Note Agreement and/or under any other Finance Document, thus rendering the resignation of SHVSA effective immediately as of the [Effective D]ate . . ., and relieving, releasing and discharging SHVSA of all of its duties and

obligations set forth in the Note Agreement." A true and correct copy of the Assignment Notice is attached as Exhibit 5.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 31.

32.    The Assignment Notice advised the Promissory Note Defendants that, "by notice dated December 4, 2019 and stamped received on December 4, 2019, SHVSA, in its capacity as Administrative Agent, notified and confirmed to the Issuer and the Guarantor that an Event of Default had occurred and was continuing. As of the date hereof, such Event of Default has not been cured." Ex. 5 at 2.

> **Answer:**    Promissory Note Defendants admit that the document attached as Exhibit 5 to the Complaint contains the quoted language. Promissory Note Defendants deny the remaining allegations in Paragraph 32.

33.    Pursuant to Section 9.17 of the Note Agreement, Plaintiff Girard Street Investment Holdings LLC, which has agreed to perform all duties of the Administrative Agent under the Note Agreement and/or under any other Finance Document, consented to the initiation of this action. Ex. 1 at 41–42, Section 9.17.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 33.

34.    Pursuant to the Assignment and Acceptance, "[f]rom and after the Effective Date," "all payments in respect of the Assigned Interest (including payments of principal, interest and other amounts)" were required to be made "to the Assignor for amounts which have accrued up to but excluding the Effective Date and to the Assignee for amounts which have accrued from and after the Effective Date." Ex. 3 at 5, Annex I, Section 2 (Payments).

> **Answer:** Promissory Note Defendants deny the allegations contained in Paragraph 34.

35.     Pursuant to Article IX, Section 9.04(b) of the Note Agreement, an assignee has the rights and obligations of a Noteholder from and after the Effective Date specified in the Assignment and Acceptance. Ex. 1 at 35–36, Section 9.04(b).

> **Answer:** Promissory Note Defendants admit that Section 9.04(b) of the Note Agreement contains language indicating that an assignee shall "to the extent of the interest assigned by such Assignment and Acceptance, have the rights and obligations of a Noteholder under the" Note Agreement, but deny any allegations that are inconsistent with the full terms of the Note, Note Agreement, or any other applicable writings, and deny the remaining allegations in Paragraph 35.

### B.     Promissory Note Defendants' Failure to Pay

36.     The Note Agreement defined PDVSA's "payment date" as the date on which the principal and interest is due as set forth in the schedule of payments in Exhibit A to the Form of Note attached to the Note Agreement. *See* Ex. 1 at 6, Section 1.01 (definition of "Payment Date"); *id.* at A-1–A-2 (Exhibit A).

> **Answer:** Promissory Note Defendants admit that the Note Agreement contains a "Payment Date" as a defined term, and that the definition includes certain dates described on Exhibit A to the form of Note attached to the Note Agreement. Promissory Note Defendants deny any allegations that are inconsistent with the full terms of the Note, Note Agreement, or any other applicable writings, and deny the remaining allegations in Paragraph 36.

37.    Based upon the specified repayment schedule, PDVSA was required to make quarterly interest-only payments for one year beginning on September 29, 2016, followed by quarterly payments of both interest and principal beginning on September 29, 2017 through June 29, 2019. Ex. 1 at A-1–A-2 (Exhibit A); Ex. 2. Pursuant to Article VI, Section 6.01 of the Note Agreement, Petróleo "absolutely, irrevocably and unconditionally" guaranteed PDVSA's payment obligations under the Note Agreement "as primary obligor and not merely as surety". *Id.* at 28, Section 6.01.

> **<u>Answer:</u>**    Promissory Note Defendants admit that the Note contains a payment schedule indicating that quarterly interest-only payments would be made for one year beginning on September 29, 2016, and that quarterly payments of both interest and principal would be made beginning on September 29, 2017. Promissory Note Defendants also admit that Section 6.01 of the Note Agreement contains the quoted language. Promissory Note Defendants deny any allegations that are inconsistent with the full terms of the Note, Note Agreement, or any other applicable writings, and deny the remaining allegations in Paragraph 37.

38.    Under the Note Agreement, failure to make the required payments when due constitutes an Event of Default and permits the Noteholders to recover the entire unpaid balance of the Note, plus interest at a default rate of 8.5% per annum. Ex. 1 at Article VII (Events of Default) and Section 2.04 (Default Interest). In particular, Article VII(a) of the Note Agreement defines "Events of Default" to include "the failure to pay the principal of, or interest on any of the Notes, when such principal becomes due and payable, including at any of the Payment Dates, by

acceleration or otherwise, and such failure continues for a period of ten (10) days after written notice thereof has been given to the Issuer." *Id.* at 30.

> **Answer:**    Promissory Note Defendants admit that Article VII(a) of the Note Agreement contains the quoted language, but deny any allegations that are inconsistent with the full terms of the Note, Note Agreement, or any other applicable writings, and deny the remaining allegations in Paragraph 38.

39.    The parties agreed that the default rate of 8.5% per annum, rather than the federal post-judgment interest rate, would apply even after a judgment was issued:

> [F]rom the date the applicable action has been taken by the Required Noteholders and for so long as such Event of Default is continuing or until the date the Required Noteholders agree otherwise, to the extent permitted by law, all amounts outstanding under this Agreement and the other Finance Documents shall bear interest (***after as well as before judgment***), payable on demand, based on and computed on the basis of actual number of days elapsed on a year of 365 days, at a rate per annum equal to eight and one-half percent (8.50% ).

Ex. 1 at 12, Section 2.04 (emphasis added).

> **Answer:**    Promissory Note Defendants admit that Section 2.04 of the Note Agreement contains the quoted language, but deny any allegations that are inconsistent with the full terms of the Note, Note Agreement, or any other applicable writings, and deny the remaining allegations in Paragraph 39.

40.    PDVSA failed to make the required principal payment on December 29, 2017 and failed to make the required principal and interest payments on March 29, 2018. Petróleo has not paid the December 29, 2017 principal payment or the March 29, 2018 principal and interest payment as Guarantor.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief about the truth or falsity of the allegations in Paragraph 40. As

set forth in the Memorandum of Law in Support of Motion to Vacate Default Judgment, Dkt. No. 41 ("Motion to Vacate"), the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Statute to Govern a Transition to Democracy to Reestablish the Validity of the Constitution of the Republic of Venezuela (the "Transition Statute"). The Ad Hoc Board manages PDVSA's assets from the United States and runs parallel to the board of PDVSA appointed by Nicolás Maduro (the "Maduro Board"). Promissory Note Defendants disavow Maduro and the Maduro Board and lack knowledge regarding actions taken by the Maduro Board.

41.    On April 17, 2018, SHVSA, the Noteholder and Administrative Agent at the time, delivered written notice to PDVSA that an Event of Default for non-payment of the December 2017 and March 2018 principal payments, and the March 2018 interest payment, had occurred and was continuing, and reserving certain rights and remedies. A true and correct copy of said notice is attached as Exhibit 6.

**Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief about the truth or falsity of the allegations contained in Paragraph 41. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. The Ad Hoc Board manages PDVSA's assets from the United States and runs parallel to the Maduro Board. Promissory Note

Defendants disavow Maduro and the Maduro Board and lack knowledge regarding actions taken by the Maduro Board.

42.    PDVSA failed to make the required principal and interest payments on June 29, 2018. Petróleo has not paid the June 29, 2018 principal and interest payment as Guarantor.

**Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief about the truth or falsity of the allegations contained in Paragraph 42. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. The Ad Hoc Board manages PDVSA's assets from the United States and runs parallel to the Maduro Board. Promissory Note Defendants disavow Maduro and the Maduro Board and lack knowledge regarding actions taken by the Maduro Board.

43.    On August 6, 2018, SHVSA, the Noteholder and Administrative Agent at the time, delivered written notice to PDVSA that an Event of Default for non-payment of the December 2017, March 2018, and June 2018 principal payments, and the March 2018 and June 2018 interest payments, had occurred and was continuing, and reserving certain rights and remedies. A true and correct copy of said notice is attached as Exhibit 7.

**Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief about the truth or falsity of the allegations contained in Paragraph 43. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the

Transition Statute. The Ad Hoc Board manages PDVSA's assets from the United States and runs parallel to the Maduro Board. Promissory Note Defendants disavow Maduro and the Maduro Board and lack knowledge regarding actions taken by the Maduro Board.

44.     PDVSA failed to make the required principal and interest payments on September 29, 2018; December 29, 2018; and March 29, 2019. Petróleo has not paid the September 29, 2018; December 29, 2018; or March 29, 2019 principal and interest payments as Guarantor.

**Answer:**     Promissory Note Defendants lack information and knowledge sufficient to form a belief about the truth or falsity of the allegations contained in Paragraph 44. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. The Ad Hoc Board manages PDVSA's assets from the United States and runs parallel to the Maduro Board. Promissory Note Defendants disavow Maduro and the Maduro Board and lack knowledge regarding actions taken by the Maduro Board.

45.     On May 14, 2019, SHVSA, the Noteholder and Administrative Agent at the time, delivered written notice to PDVSA that an Event of Default for non-payment of the December 2017; March 2018; June 2018; September 2018; December 2018; and March 2019 principal payments, and the March 2018; September 2018; December 2018; and March 2019 interest payments had occurred and was continuing, and reserving certain rights and remedies. A true and correct copy of said notice is attached as Exhibit 8.

**Answer:**   Promissory Note Defendants lack information and knowledge sufficient to form a belief about the truth or falsity of the allegations contained in Paragraph 45. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. The Ad Hoc Board manages PDVSA's assets from the United States and runs parallel to the Maduro Board. Promissory Note Defendants disavow Maduro and the Maduro Board and lack knowledge regarding actions taken by the Maduro Board.

46.    PDVSA failed to make the final required principal and interest payments on June 29, 2019. Petróleo has not paid the June 29, 2019 principal and interest payments as Guarantor.

**Answer:**   Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 46. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. The Ad Hoc Board manages PDVSA's assets from the United States and runs parallel to the Maduro Board. Promissory Note Defendants disavow Maduro and the Maduro Board and lack knowledge regarding actions taken by the Maduro Board.

47.    On December 4, 2019, SHVSA, the Noteholder and Administrative Agent at the time, delivered written notice to PDVSA that an Event of Default for non-payment of the December 2017; March 2018; June 2018; September 2018; December 2018; March 2019; and June 2019

principal payments, and the March 2018; June 2018; September 2018; December 2018; March 2019; and June 2019 interest payments had occurred and was continuing, and reserving certain rights and remedies. A true and correct copy of said notice is attached as Exhibit 9.

> **Answer:** Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 47. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. The Ad Hoc Board manages PDVSA's assets from the United States and runs parallel to the Maduro Board. Promissory Note Defendants disavow Maduro and the Maduro Board and lack knowledge regarding actions taken by the Maduro Board.

48. To date, Promissory Note Defendants have not made any additional payments on the outstanding amounts, or raised any defenses to payment.

> **Answer:** Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 48. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. The Ad Hoc Board manages PDVSA's assets from the United States and runs parallel to the Maduro Board. Promissory Note Defendants disavow Maduro and the Maduro Board and lack knowledge regarding actions taken by the Maduro Board.

49.    Accordingly, Promissory Note Defendants owe Plaintiff $175,000,108 in principal, plus 8.5% default interest from December 29, 2017 to the present date of September 30, 2024 in the amount of $100,538,761, Ex. 1 at 12, Section 2.04, plus 9% statutory interest from June 29, 2019 to the present date of September 30, 2024 in the amount of $82,849,366, New York C.P.L.R. § 5001, plus fees and other costs, for a total of $358,388,235. For each day between September 30, 2024 and the date of entry of judgment, these sums will continue to accrue interest at the rate of $84,595 per day. Promissory Note Defendants' default also entitles Plaintiff to all costs and expenses, including reasonable attorneys' fees and court costs, incurred in collecting or otherwise enforcing the Note Agreement. Ex. 1 at 28, Section 6.01; *id.* at 30, Article VII.

**<u>Answer:</u>**    Promissory Note Defendants deny the allegations contained in Paragraph 49.

50.    All sums owed will continue to accrue interest post-judgment at the contractual post-judgment rate of 8.5% per annum. Ex. 1 at 12, Section 2.04.

**<u>Answer:</u>**    Promissory Note Defendants admit that the Note Agreement states that the "amounts outstanding under [the Note Agreement] and other Finance Documents shall bear interest . . . at a rate per annum equal to eight and one-half percent (8.50%)." Promissory Note Defendants deny all other allegations contained in Paragraph 50.

51.    Plaintiff and prior Noteholder SHVSA have fully performed their obligations under the Note Agreement and Note.

**<u>Answer:</u>**    Promissory Note Defendants deny the allegations contained in Paragraph 51.

52.     PDVSA is contractually obligated to pay the amounts of interest and principal declared to be due and payable, together with accrued interest thereon, "without presentment, demand, protest or any other notice of any kind..." Ex. 1 at 32, Article VII.

> **Answer:**     Promissory Note Defendants admit that the Note Agreement contains the quoted language, but deny any allegations that are inconsistent with the full terms of the Note, Note Agreement, or any other applicable writings, and deny the remaining allegations in Paragraph 52.

53.     Petróleo, as Guarantor, contractually agreed that Plaintiff may recover under the Guarantee regardless of whether the obligations in the Note Agreement are invalid, illegal or unenforceable and waived "any defense based on or arising out of any defense of the Issuer or the Guarantor or the unenforceability of all or any part of the Guaranteed Obligations..." Ex. 1 at 29–30, Sections 6.03(b) and 6.04. Petróleo further waived any right to "acceptance hereof, presentment, demand, protest and, to the fullest extent permitted by law, any notice not provided for herein, as well as any requirement that at any time any action be taken by any person against any Obligated Party or any other person." *Id.* at 30, Section 6.04.

> **Answer:**     Promissory Note Defendants admit that the Note Agreement contains the quoted language, but deny any allegations that are inconsistent with the full terms of the Note, Note Agreement, or any other applicable writings, and deny the remaining allegations in Paragraph 53.

54.     Promissory Note Defendants have invoked U.S. sanctions against Venezuela and PDVSA offensively, claiming that these sanctions prevent creditors from enforcing their rights, but cases against Promissory Note Defendants and Venezuela are proceeding apace in this Court and others. *See, e.g., Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, No. 17-mc-151 (D. Del.)

("***Crystallex***"); *Red Tree Investments, LLC v. Petróleos de Venezuela, S.A. et al.*, No. 19-cv-2519 (S.D.N.Y.); *Red Tree Investments, LLC v. Petróleos de Venezuela, S.A. et al.*, No. 22-mc-69 (D. Del.); *PDB Limited v. Petróleos de Venezuela, S.A. et al.*, No. 23-cv-10843 (S.D.N.Y.). Furthermore, a judgment has been awarded against Promissory Note Defendants by this Court on similar facts. *Pharo Gaia Fund, Ltd. et al v. Petróleos de Venezuela, S.A.*, No. 23-cv-10071 (S.D.N.Y.) (Rakoff, J.) Dkt. No. 25. Sanctions do not excuse Promissory Note Defendants' contractual obligations, particularly where PDVSA has demonstrated the ability to obtain OFAC licenses for payments to creditors, as when PDVSA received an OFAC license for its payment of over $70 million to the 2020 bondholders in 2019.

> **Answer:**    Promissory Note Defendants admit the existence of the referenced lawsuits but deny all other allegations contained in Paragraph 54.

55.    Accordingly, Promissory Note Defendants are in breach of their contractual obligations under the Note Agreement and the Note.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 55.

### C.    *Plaintiff Obtained a Default Judgment*

56.    On December 11, 2023 Plaintiff brought a claim against Promissory Note Defendants in this Court for breach of contract, seeking to enforce the Note Agreement and Note.

> **Answer:**    Promissory Note Defendants admit the allegations contained in Paragraph 56.

57.    On December 20, 2023 the summons and complaint were properly served on Corporation Service Company, Promissory Note Defendants' registered agent in Albany, NY, pursuant to the terms of the Foreign Sovereign Immunities Act.

**Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 57.

58.    Personal service on a legal representative of Corporation Service Company constituted proper service on PDVSA pursuant to 28 U.S.C. § 1608(b)(1) and (b)(2). Pursuant to 28 U.S.C. § 1608(c)(2), service on PDVSA was therefore deemed to have been made as of December 20, 2023.

**Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 58.

59.    As an agency or instrumentality of a foreign state served pursuant to 28 U.S.C. § 1608(b), PDVSA was required to serve an answer or other responsive pleading to the complaint within sixty days after service, so PDVSA's answer or other responsive pleading was due 60 days from December 20, 2023. PDVSA was therefore required to answer or otherwise respond to the Complaint on or before February 20, 2024.

**Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 59.

60.    Personal service on a legal representative of Corporation Service Company constituted proper service on Petróleo pursuant to Fed. R. Civ. P. 4(h)(1)(B), so Petróleo's answer or other responsive pleading was due 21 days from December 20, 2023. Petróleo was therefore required to answer or otherwise respond to the Complaint on or before January 10, 2024.

**Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 60.

61.    Petróleo did not answer the complaint or file a responsive pleading by January 10, 2024, and PDVSA did not answer the complaint or file a responsive pleading by February 20, 2024.

> **Answer:** Promissory Note Defendants admit that Petróleo made no filings in this matter on or before January 10, 2024, and that PDVSA made no filings in this matter on or before February 20, 2024. Promissory Note Defendants deny the remainder of the allegations in Paragraph 61.

62.    The Court conducted a telephonic Status Conference on February 5, 2024 at which Plaintiff informed the Court of the status of service, including correspondence received from Corporation Service Company. At the hearing, Plaintiff was directed to file a motion for default judgment.

> **Answer:** Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 62.

63.    On February 22, 2024, Plaintiff filed a proposed certificate of default. The Clerk of Court issued the certificate of default on February 23, 2024.

> **Answer:** Promissory Note Defendants admit the allegations contained in Paragraph 63.

64.    Plaintiff filed a motion for default judgment on February 23, 2024, and the Court heard the case on March 4, 2024.

> **Answer:** Promissory Note Defendants admit the allegations contained in Paragraph 64.

65.    On March 5, 2024 the Court entered an order granting default judgment in favor of Plaintiff and against PDVSA and Petróleo.

> **Answer:** Promissory Note Defendants admit the allegations contained in Paragraph 65.

66.     On March 8, 2024, the Court vacated the March 5 order and superseded it with an order granting default judgment in favor of Plaintiff and against Promissory Note Defendants jointly and severally, in the amount of $175,000,108, plus interest from December 29, 2017 to the date of entry of judgment in the amount of $166,103,870, for a total of $341,103,978, plus attorneys' fees and costs in an amount that was to be determined. *Girard Street Investment Holdings, LLC v. Petróleos de Venezuela, S.A. et al.*, No. 23-cv-10772 (S.D.N.Y.) ("**23-10772**") Dkt. No. 34.

> **Answer:**     Promissory Note Defendants admit the allegations contained in Paragraph 66.

67.     On March 25, 2024, the Court awarded Plaintiff $122,342.60 in attorneys' fees and costs. 23-10772 Dkt. No. 36.

> **Answer:**     Promissory Note Defendants admit the allegations contained in Paragraph 67.

68.     Counsel for PDVSA entered their appearances on June 11, 2024. 23-10772 Dkt. Nos. 38 and 39.

> **Answer:**     Promissory Note Defendants admit the allegations contained in Paragraph 68.

69.     On August 1, 2024, PDVSA filed a motion to vacate the default judgment which was granted on September 10, 2024. 23-10772 Dkt. Nos. 40, 59.

> **Answer:**     Promissory Note Defendants admit the allegations contained in Paragraph 69.

70.    Counsel for PDVSA represented on September 27, 2024 that they would be entering appearances on behalf of Petróleo. As of the time of filing of this Consolidated Amended Complaint on September 30, 2024, no counsel have entered any appearances for Petróleo.

**Answer:**    Promissory Note Defendants admit the allegations contained in Paragraph 70. Counsel for Petróleo entered appearances on October 3, 2024.

## II.    Alter Ego Liability

71.    Plaintiff is not the first creditor to have brought alter ego claims against entities in the chain from Citgo, to Citgo Holding, to PDVH, to PDVSA, to Venezuela, requesting that a court reverse-pierce the veil from a parent down to its subsidiary. In fact, the Third Circuit has repeatedly reverse-pierced the veil between Venezuela and PDVSA, and the Supreme Court has repeatedly declined to review this determination. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 932 F.3d 126, 152 (3d Cir. 2019) ("[I]f the relationship between Venezuela and PDVSA cannot satisfy the Supreme Court's extensive-control requirement, we know nothing that can."), *cert. denied*, 140 S. Ct. 2762 (2020); *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 73 F.4th 157, 176 (3d Cir. 2023) ("For the second time in five years, we conclude that PDVSA is the alter ego of Venezuela."), *cert. denied*, 144 S. Ct. 549 (2024).

**Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 71.

72.    This action is the logical extension of that decision: the profits of PDVH, a Delaware corporation, have been transferred to PDVSA and then to Venezuela to fund sovereign functions of Venezuela rather than for commercial purposes or to pay legitimate third-party creditors, including Plaintiff, before dividends were distributed up the chain.

> **<u>Answer:</u>**  Promissory Note Defendants admit that PDVH is a Delaware corporation. Promissory Note Defendants deny the remaining allegations contained in Paragraph 72.

73.    Prior to 2019, Venezuela operated PDVSA, PDVH, Citgo Holding, and Citgo as a single economic unit, commingling the funds and disregarding the corporate form, including when the President of Venezuela directly appointed the President of Citgo, rather than the boards of each parent appointing the boards of each subsidiary. The subsidiaries, including PDVSA and PDVH, could not and did not pay their commercial debts when they came due, but the dividends generated from Citgo's assets were funneled directly up to Venezuela without being used to pay commercial debts. PDVH was used as a conduit through which PDVSA funneled revenue generated by Citgo to itself, and to its alter ego Venezuela.

> **<u>Answer:</u>**  Promissory Note Defendants deny the allegations contained in Paragraph 73.

74.    After 2019, the U.S.-recognized National Assembly continued to operate PDVSA, PDVH, Citgo Holding, and Citgo as a single economic unit with respect to assets outside of Venezuela. PDVH was used as a conduit through which the PDVSA Ad Hoc Board funneled revenue generated by Citgo to itself, and to its alter ego Venezuela. Furthermore, the National Assembly's 2019 Statute Governing the Transition to Democracy prohibits PDVH from making dividend payments to PDVSA while Maduro continues to illegitimately hold the presidency. Accordingly, dividends are blocked, and cannot be paid to creditors.

> **<u>Answer:</u>**  Promissory Note Defendants deny the allegations contained in Paragraph 74.

75.    PDVSA, PDVH, Citgo Holding, and Citgo are in the same corporate group, and are subject to the same, group-wide system of corporate governance and control. The same system of

command and control which unites Venezuela and PDVSA as alter egos similarly unites PDVSA and PDVH as alter egos. Venezuela treats PDVSA as an arm of the state, and so too do Venezuela and PDVSA treat PDVH as an arm of the Venezuelan state, conduct that occurred prior to 2019 and that continues to this day.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 75.

76.    This conduct, which results in the operation of PDVH as a sham company, without a separate identity, is wrongful and an injustice.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 76.

## III.    Venezuela's Control of PDVSA, PDVH, and Citgo

### A.    Economic and Political Environment

77.    On January 1, 1976, Venezuela created PDVSA as part of the nationalization of Venezuela's oil resources. Between 1986 and 1990, PDVSA acquired 100% ownership of Citgo.

> **Answer:**    Promissory Note Defendants admit that Venezuela created PDVSA. Promissory Note Defendants deny the remaining allegations contained in Paragraph 77.

78.    Beginning in approximately 2007, Hugo Chávez, the then-President of Venezuela, began a wave of nationalizations, including of large oil and mining projects, among many other expropriations. Joint ventures with foreign oil companies were converted into partnerships in which PDVSA held a minimum 60% stake, and in 2009, Chávez nationalized hundreds of assets from service providers, further straining PDVSA's capacity to manage its operations. Many of the entities whose assets had been nationalized initiated arbitration proceedings seeking compensation for the value of their expropriated property.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 78.

79.    Chávez used PDVSA as a "piggy bank" for Venezuela, imposing heavy taxes to finance increased public spending. For example, a few years into his first term, the royalty rate for all oil operators was nearly doubled by the 2001 reform of the Hydrocarbons Law.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 79.

80.    In addition, Chávez required PDVSA to directly fund social spending beyond its fiscal obligations. Between 2004 and 2016, PDVSA allocated approximately $144 billion, or 12% of its gross revenues, to the government for "Social Development Contributions." Much of this funding went to the opaque National Development Fund, but, on information and belief, due to corruption many of the projects were not completed.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 80.

81.    From 2006 to 2016, both Venezuelan public external debt and PDVSA's debt grew significantly. The increased debt service compounded PDVSA's financial troubles, limiting its ability to invest in oil production, as investment funds were diverted to non-oil sectors, including electricity infrastructure, in response to Venezuela's mounting energy crisis.

**Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 81.

82.    In 2012, Chávez was reelected for a third six-year term. The Venezuelan public sector ran a deficit of 15.1% of GDP in 2012 due to a substantial increase in spending (particularly on imports), partially engineered to ensure Chávez's reelection. By the fourth quarter of 2012, the Venezuelan economy was running a sizable current account deficit of over $2 billion (over 2% of quarterly GDP).

**Answer:**    Promissory Note Defendants admit that Chávez was reelected for a third six-year term in 2012. Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 82.

83.    Chávez died shortly after the start of his term, and Nicolás Maduro was elected in a snap election held in April of 2013 to complete Chávez's term in office. In June 2013, the United States recognized Maduro as the President of Venezuela.

**Answer:**    Promissory Note Defendants admit the allegations contained in Paragraph 83.

84.    In 2014, the price of oil collapsed; between June 2014 and January 2016, the price of a Venezuelan barrel of oil fell from over $100 to under $25. PDVSA's revenues plummeted from over $120 billion in 2014 to under $50 billion in 2016. PDVSA struggled to pay suppliers and joint venture partners; the oil sector's short-term liabilities rose from almost $750 million in 2006 to nearly $14 billion in 2015. In other words, PDVSA could not pay its commercial debts when they came due.

**Answer:** Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 84.

85. In December 2015 elections for Venezuela's National Assembly, the opposition coalition won over two thirds of the seats. Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts in Support of Defendants' Cross-Motion for Summary Judgment, *Petróleos de Venezuela, S.A. et al. v. MUFG Union Bank, N.A. at al.*, Case No. 1:19-cv-10023 (S.D.N.Y.), Dkt. No. 166 ¶ 72 ("**PDVH Statement of Facts**").

**Answer:** Promissory Note Defendants admit the allegations contained in Paragraph 85.

86. Between 2007 and 2016, each of Moody's, Fitch, and S&P downgraded PDVSA's credit rating. PDVH Statement of Facts ¶ 54.

**Answer:** Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the information contained in Paragraph 86.

87. Venezuela's credit risk rose from approximately 900 basis points in July 2014 to over 3,000 basis points in April 2016. These spreads, and the fact that no country had a lower credit rating than Venezuela, made it nearly impossible for the Venezuelan government or PDVSA to engage in unsecured financing.

**Answer:** Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the information contained in Paragraph 87.

88.    Thus, by June 2016, when the Note was issued, not only did PDVSA and Venezuela lack the funds to pay the accounts receivable owed to the noteholder, they also faced other substantial debts, including, but not limited to, various arbitral awards that had already been issued against PDVSA and Venezuela.

**Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the information contained in Paragraph 88.

89.    In 2018, presidential elections were held in Venezuela. Maduro claimed victory, but the National Assembly declared on January 15, 2019 that the election was illegitimate and named Juan Guaidó as the Interim President of Venezuela.

**Answer:**    Promissory Note Defendants admit the allegations contained in Paragraph 89.

90.    The United States recognized Guaidó as the Interim President of Venezuela on January 23, 2019.

**Answer:**    Promissory Note Defendants admit the allegations contained in Paragraph 90.

91.    On February 13, 2019, the National Assembly approved the Guaidó administration's appointments to the PDVSA Ad Hoc Board, which in turn appointed the directors of PDVH. PDVH Statement of Facts ¶ 309. In 2020, PDVSA and PDVH advised the United States District Court for the Southern District of New York that PDVSA's "board members [are] appointed by the Venezuelan government." PDVH Statement of Facts ¶ 9.

**Answer:**    Promissory Note Defendants admit the National Assembly approved the Guaidó administration's appointments to the PDVSA Ad Hoc Board and

that the document referenced contains the quoted text. Promissory Note

Defendants deny all remaining allegations in Paragraph 91.

92.    The Second Circuit noted in 2022 that control of PDVSA is divided: "The Maduro-appointed Board remained in control of all operations and assets in Venezuela. At the same time, ... the Guaidó-appointed Ad Hoc Board was recognized in the United States as the governing body." *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 51 F.4th 456, 463 (2d Cir. 2022).

> **Answer:**    Promissory Note Defendants admit that the cited decision of the Second
> Circuit contains the above-quoted language. Promissory Note Defendants
> further admit that the United States has recognized the Ad Hoc Board as the
> governing body of PDVSA. Promissory Note Defendants deny the remaining
> allegations contained in Paragraph 92.

93.    PDVH has been registered with the United States Department of Justice as a foreign agent for the PDVSA Ad Hoc Board since its creation. In regular filings provided to the Department of Justice pursuant to the Foreign Agents Registration Act of 1938 ("FARA"), PDVH explained that it "interacted with U.S. Government officials to advocate for a resolution to various creditor claims against the Government of Venezuela and/or its subsidiaries in which PDVH is either a party or in which the value of PDVH and its subsidiaries is implicated by the claim. PDVH's preparation for those meetings on occasion involved discussion with Venezuelan government officials within the Government of Juan Gerardo Guaidó." Department of Justice guidelines on "The Scope of Agency Under FARA" note that there must be "some level of power by the principal over the agent or some sense of obligation on the part of the agent to achieve the principal's request," such that "it is 'fair to draw the conclusion that an individual is not acting independently, is not simply stating his or her own views, but is acting as an agent or alter ego of

the foreign principal.'" Accordingly, PDVH's registration is a reflection of the reality that PDVH is controlled by PDVSA.

> **Answer:** Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations concerning PDVH's registration with the United State Department of Justice and filings pursuant to FARA. Promissory Note Defendants deny the remaining allegations in Paragraph 93.

94.     In its September 2022 FARA filing, PDVH noted that Carlos Jordá, "[a]cting on behalf of PDVH, . . . ha[d] participated in meetings with representatives of the U.S. Government . . . to discuss the importance and means of protecting the assets of PDVH and its subsidiaries, or the value of said assets, from claims brought by creditors of the Maduro regime."

> **Answer:** Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 94.

95.     Since January 2023, the United States has recognized the 2015 National Assembly as the legitimate governmental authority for the Bolivarian Republic of Venezuela. The National Assembly currently supervises the Asset Protection Council, which in turn controls the PDVSA Ad Hoc Board.

> **Answer:** Promissory Note Defendants admit that the United States has recognized the 2015 National Assembly as the legitimate governmental authority for the Bolivarian Republic of Venezuela. Promissory Note Defendants deny the remaining allegations contained in Paragraph 95.

96.     In its March 2023 FARA filing, PDVH reported that it had participated in meetings with representatives of the U.S. Government and prepared materials for those meetings, in an effort to protect PDVH's assets from seizure or diminution in value by creditors of the Maduro regime." PDVH also reported its "understand[ing] that under the DOJ's interpretation of FARA, PDVSA's indirect ownership of PDVH may, in itself, render PDVH an agent of the PDVSA Ad Hoc Board."

> **Answer:**        Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 96.

97.     As recently as March 28, 2024, PDVH reported in its FARA filing that "PDVH has worked to advocate for a resolution to various creditor claims against the Government of Venezuela and/or its subsidiaries in which PDVH is either a party or in which the value of PDVH and its subsidiaries is implicated by the claim." The lobbying firm which represents the "Ad Hoc Board of Petróleos de Venezuela, S.A. through PDV Holding, Inc.," and is paid an $80,000/month retainer by the "Ad Hoc Board of Petróleos de Venezuela, S.A. through PDV Holding, Inc.," reported on its own FARA forms as recently as June 2024 that it assisted the PDVSA Ad Hoc Board "through PDV Holding, Inc." with its "efforts to engage with and advocate before the federal government on issues relating to challenges brought by creditors of the illegitimate Maduro regime that threaten PDVH's continued ownership of its subsidiaries and the durability of PDVH's relationship with its shareholder, in order to secure protections for PDVH and its subsidiaries." If PDVH were operating as an independent entity, it would not spend time and effort on resolving the debts of PDVSA since PDVH is purportedly not liable for those debts. Yet, at the domination and control of PDVSA and Venezuela, PDVH seeks to resolve these issues for its dominant shareholders. Furthermore, the

payment of $80,000 per month by PDVH to PDVSA's lobbying firm is an example of PDVH's funds being siphoned to PDVSA, and of the use of PDVH as a mere conduit for PDVSA.

> **Answer:**      Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 97 concerning the contents of PDVH's FARA filings. Promissory Note Defendants deny the remaining allegations contained in Paragraph 97.

98.    Subsidiaries of PDVH have also had their funds siphoned to PDVSA. For example, in 2020 PDV USA, Inc. ("**PDV USA**"), a wholly-owned subsidiary of PDVH, filed a complaint for breach of contract in the United States District Court for the Southern District of New York alleging that "PDV USA was instructed by the parent company (PDVSA) of its parent company (PDV Holding, Inc.) to enter into [a consulting agreement] for the purported purpose of improving PDVSA's 'long-term reputation and standing' in the United States." *PDV USA, Inc. v. Interamerican Consulting Inc.*, No. 20-cv-3699 (S.D.N.Y.), Dkt. No. 1 ¶¶ 1, 9. In its Second Amended Complaint, PDV USA explained, "PDV USA had (and has) no independent employees or independent business operations. It existed solely to provide shareholder support services in the United States to PDVSA. In fact, at the time, most of the executives of PDV USA held simultaneous positions at PDVSA, and lived and worked at PDVSA in Caracas." *Id.* at Dkt. No. 104 ¶ 11. PDV USA alleged it paid $15 million "because it was instructed to do so by PDVSA," even though it "had no visibility into what, if any services [the defendant] was providing to PDVSA," and "received nothing . . . in exchange." *Id.* ¶¶ 7, 60.

> **Answer:**      Promissory Note Defendants deny the first sentence of Paragraph 98. Promissory Note Defendants admit that the documents referenced contain

the language quoted, but deny Plaintiff's characterizations concerning these statements and the allegations contained within the quoted language. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. The Ad Hoc Board manages PDVSA's assets from the United States and runs parallel to the Maduro Board. Promissory Note Defendants disavow Maduro and the Maduro Board and lack knowledge regarding actions taken by the Maduro Board. Promissory Note Defendants deny the remaining allegations in Paragraph 98.

99.     PDV USA further alleged, "Beginning on or around May 2017, employees within Citgo (who were in charge of managing PDV USA) began pushing to have the [consulting] Agreement assigned to PDVSA. These employees . . . felt highly uncomfortable with maintaining the Agreement—forced on PDV USA by PDVSA—on PDV USA's books." *Id.* ¶ 68. PDV USA further alleged that, in May 2017, "Citgo's Compliance Committee was informed about the Agreement, and Citgo's Controller (a member of the Compliance Committee) ordered that payments to Interamerican cease. Around the same time, senior management at Citgo, PDV USA, and PDVSA also determined that the Agreement should be assigned to PDVSA." *Id.* ¶ 69.

**Answer:**     Promissory Note Defendants admit that the documents referenced contain the language quoted, but deny Plaintiff's characterizations concerning these statements and the allegations contained within the quoted language. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim

President Juan Guaidó in 2019 pursuant to the Transition Statute. The Ad

Hoc Board manages PDVSA's assets from the United States and runs

parallel to the Maduro Board. Promissory Note Defendants disavow

Maduro and the Maduro Board and lack knowledge regarding actions taken

by the Maduro Board. Promissory Note Defendants deny the remaining

allegations in Paragraph 99.

100.    PDV USA's Second Amended Complaint continued at ¶ 78:

> It defies credulity to assert that PDVSA, which at the time was
> controlled entirely by the Maduro Regime, directed its U.S. subsidiary
> to hire Interamerican so that Interamerican could advise Citgo,
> PDVSA's primary U.S. operating entity, on how to disengage from
> PDVSA and the Maduro regime. This claim is even more incredible
> in light of the fact that (a) PDVSA provided the $50 million earmarked
> for Interamerican, (b) PDV USA's authorized representative under the
> Agreement, as well as the signatory on behalf of PDV USA, were both
> PDVSA employees with PDVSA email addresses, (c) PDV USA's
> sole corporate purpose was to provide shareholder services to PDVSA,
> and (d) the intended participants at the . . . meeting were PDVSA
> employees and members of the Venezuelan government and the
> meeting was going to have nothing to do with Citgo.

**Answer:**    Promissory Note Defendants admit that the documents referenced contain

the language quoted, but deny Plaintiff's characterizations concerning these

statements and the allegations contained within the quoted language. As set

forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the

only legitimate governing entity of PDVSA, was appointed by Interim

President Juan Guaidó in 2019 pursuant to the Transition Statute. The Ad

Hoc Board manages PDVSA's assets from the United States and runs

parallel to the Maduro Board. Promissory Note Defendants disavow

Maduro and the Maduro Board and lack knowledge regarding actions taken

by the Maduro Board. Promissory Note Defendants deny the remaining allegations in Paragraph 100.

101.    In short, PDV USA repeatedly informed the United State District Court for the Southern District of New York that PDVSA ignored corporate formalities to operate PDV USA, a wholly-owned subsidiary of PDVH, as a sham entity, "forc[ing]" PDV USA (through executives who were concurrent directors of PDVSA) to make decisions that were against PDV USA's interests.

**Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 101.

102.    In PDV USA's April 30, 2021 FARA filing, where it retroactively registered as an agent of PDVSA from 2015 through January 2019, PDV USA listed various forms of financial support it provided in relation to, or connection with, "the Permanent Mission of the Bolivarian Republic of Venezuela" and "Venezuelan diplomatic representatives," including "rent, utilities, and furniture expenses for three apartments in New York City . . . [which] facilitated living arrangements for several Venezuelan citizens including a member of the Venezuelan delegation to the United Nations." PDV USA also "provided financial support in relation to renovations to the Venezuelan Embassy and the Residence of the Venezuelan Ambassador to the United Nations, along with office supplies for the Venezuelan Embassy." Furthermore, PDV USA paid over $110,000 for "computer equipment and printers"; over $32,000 for "[i]nstallation of new door for Venezuelan Embassy"; over $89,000 for "[p]er diem for Venezuelan Youth orchestra performers at UN"; and much, much more. These dozens of payments, worth millions of dollars, are further examples of funds that should have gone to PDVH being siphoned to PDVSA and to Venezuela, and of the use of PDVH as a mere conduit for PDVSA and Venezuela.

**Answer:**          Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the contents of PDV USA's FARA filings. Promissory Note Defendants deny the remaining allegations in Paragraph 102. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. The Ad Hoc Board manages PDVSA's assets from the United States and runs parallel to the Maduro Board. Promissory Note Defendants disavow Maduro and the Maduro Board and lack knowledge regarding actions taken by the Maduro Board.

103.    The siphoning of funds continued under the U.S.-recognized National Assembly. According to FARA filings, Horacio Medina, the Chair of the PDVSA Ad Hoc Board since December 2020, 23-10772 Dkt. No. 43, is paid a regular stipend for his services of "Act[ing] as President of the PDVSA Ad Hoc Board and represent[ing] the PDVSA Ad Hoc Board to third parties." Medina's stipend was paid by the "Ad Hoc Board of the Central Bank of Venezuela" on November 20, 2021 ($3,400), December 9, 2021 ($3,400), December 14, 2021 ($3,400), July 9, 2022 ($13,600), August 17, 2022 ($3,400), August 29, 2022 ($3,400), November 3, 2022 ($3,400), November 23, 2022 ($3,400), and December 9, 2022 ($3,400). Then, according to FARA filings through May 2024, Medina's stipend increased and was paid by PDV Chalmette, LLC: $40,000 on September 14, 2023 and $5,000 on each of October 2, 2023; November 1, 2023; December 1, 2023; January 1, 2024; February 1, 2024; March 1, 2024; and April 1, 2024. Upon information and belief, PDV Chalmette, LLC is a wholly-owned subsidiary of PDVH, and these payments made from PDV Chalmette, LLC directly to Medina for his services of "represent[ing] the PDVSA Ad Hoc Board to

third parties" provide an example of at least $75,000 in funds that should have gone to PDVH instead being siphoned to PDVSA, and of the use of PDVH as a mere conduit for PDVSA.

**Answer:**    Promissory Note Defendants deny the allegations in Paragraph 103.

104.    A presidential election was held in Venezuela on July 28, 2024. On August 1, 2024, U.S. Secretary of State Antony Blinken issued a press release noting that, despite Maduro's declaration of a re-election victory, "it is clear to the United States and, most importantly, to the Venezuelan people that Edmundo González Urrutia won the most votes in Venezuela's July 28 presidential election."

**Answer:**    Promissory Note Defendants admit the allegations contained in Paragraph 104.

105.    On September 8, 2024, Edmundo González Urrutia sought asylum in Spain.

**Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 105.

106.    On September 17, 2024, Venezuela and PDVSA jointly filed a brief in *Crystallex*, Dkt. No. 1273, arguing that a stay should be granted in that case because, "[i]f and when Mr. González assumes the presidency, his government intends to renegotiate Venezuela's debt, through the mechanisms commonly used by sovereign States to restructure their debt, an opportunity that has so far been blocked by Maduro's usurpation of power." But as the *Crystallex* Special Master pointed out in his September 24, 2024 opposition brief, "the Republic and PDVSA rely on 'the ***possibility*** that a new Venezuelan government' will come to power in January 2025 and will thereafter '***propose*** a global resolution of Venezuela's debts' that might 'present a window of opportunity' for an alternative resolution of Venezuela's debts. . . . The Republic and PDVSA offer no evidence in connection with

their motion to show that any such proposal currently exists or will exist by January 2025, much less that such a proposal would be accepted and approved." *Crystallex* Dkt. No. 1308 (emphasis in original).

> **Answer:**    Promissory Note Defendants admit that the referenced documents contain the quoted language. Promissory Note Defendants deny the remainder of the allegations contained in Paragraph 106.

107.    Venezuela and PDVSA have been making these same arguments since 2019, and there is no sign that the situation will change, or the dispute between the U.S.-recognized government and the Maduro-controlled government will be resolved, any time soon. Regardless of the ongoing political dispute, commercial obligations are owed by Petróleo, PDVSA, and PDVSA's alter ego PDVH to Plaintiff, and Plaintiff has been wronged.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 107.

108.    At the time of filing of this Consolidated Amended Complaint on September 30, 2024, 100% of the shares of Citgo are owned by Citgo Holding; 100% of the shares of Citgo Holding are owned by PDVH; and 100% of the shares of PDVH are owned by PDVSA (as controlled by the PDVSA Ad Hoc Board), which is an agency or instrumentality of Venezuela and is controlled by the Asset Protection Council, which in turn is controlled by the 2015 National Assembly.

> **Answer:**    Promissory Note Defendants admit that 100% of the shares of CITGO are owned by CITGO Holding; 100% of the shares of CITGO Holding are owned by PDVH; and 100% of the shares of PDVH are owned by PDVSA,. Promissory Note Defendants further admit that PDVSA is an agency or

instrumentality of Venezuela. Promissory Note Defendants deny the remaining allegations contained in Paragraph 108.

### B.    Dividend Payments

109.    When Chávez served as the President of Venezuela, he ordered Citgo to pay hundreds of millions of dollars in dividends to support the Venezuelan economy, as Dr. Juan Carlos Boué—an academic who conducted a study on PDVSA's internationalization program commissioned by PDV (UK) S.A. at the request of the Venezuelan Minister of Energy and Mines—noted in March 2004. ("The President gave orders that the affiliates (especially Citgo, by far the largest among them) should make a contribution to ameliorate the fiscal crisis in which the Venezuelan government found itself . . . As a result of this, Citgo declared 468 MMUSD in dividends for that year," some portion of which reached PDVSA, "a figure which exceeded by 401 MMUSD the total amount of dividends that it had declared throughout the eight years in which PDVSA had been its sole shareholder.").

**Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 109.

110.    In a May 25, 2005 speech to the Venezuelan National Assembly, Rafael Dario Ramírez Carreño, the Minister of Energy and Oil and President of PDVSA, explained that PDVSA was "putting an end to th[e] perverse structure" of the "iron 'Corporate Veil' that stood between international business and the control of the Venezuelan State." He continued, "Our instructions to PDVSA to cooperate, without restriction, with [Venezuela's revenue service] the SENIAT, marks an attitude diametrically opposed to the attitude of the old PDVSA that allowed its activity to become a black box impenetrable to the control of the Venezuelan State. We are dismantling

this black box, one by one in its parts, to definitively make the management of the new PDVSA

transparent." Mr. Ramírez concluded, "The reality is that PDVSA now belongs to the People, [and]

is perfectly aligned with the guidance of the Venezuelan State . . . . PDVSA and its workers are

now an integral part of the country."

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to
> form a belief as to the truth or falsity of the allegations contained in
> Paragraph 110.

111.    The following year, in February 2006, Chávez instructed Mr. Ramirez "to allocate

towards the financing of [a] Science Mission 941 billion bolivars derived from the dividends of

PDVSA's subsidiary in the United States, CITGO, calculated at $500 million." PDVSA's press

release noted Chávez's "emphasi[s] that Citgo and all it has is 100% Venezuelan, when faced with

some voices that have designated this company as American."

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to
> form a belief as to the truth or falsity of the allegations contained in
> Paragraph 111.

112.    Citgo's dividends continued to flow to PDVSA, through PDVH. For example, in

May 2013, Reuters reported that the "refining subsidiary of state-owned Petróleos de Venezuela

(PDVSA) in the United States, Citgo, will pay $461 million in first-quarter dividends to the parent

company this month," "a quarterly record." In comparison, in the prior year, 2012, "all of

PDVSA's external affiliates, including Citgo, reported a dividend to the parent company of just

$77 million."

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to
> form a belief as to the truth or falsity of the allegations contained in

Paragraph 112. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. The Ad Hoc Board manages PDVSA's assets from the United States and runs parallel to the Maduro Board. Promissory Note Defendants disavow Maduro and the Maduro Board and lack knowledge regarding actions taken by the Maduro Board.

113.    In July 2014, Citgo prepared to issue a $650 million note in part to finance $300 million in dividends for PDVSA. Press coverage from July 17, 2014 noted Citgo would therefore "be indebted to provide resources to its parent company [PDVSA]."

**Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 113. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. The Ad Hoc Board manages PDVSA's assets from the United States and runs parallel to the Maduro Board. Promissory Note Defendants disavow Maduro and the Maduro Board and lack knowledge regarding actions taken by the Maduro Board.

114.    In the years prior to 2015, Citgo had been paying dividends roughly equal to net earnings. Then, in February 2015, Citgo Holding issued $2.8 billion in debt, at PDVSA's direction, the proceeds of which largely passed through PDVH to PDVSA as a dividend. Upon information and belief, this transaction was negotiated and orchestrated by PDVSA employees,

not employees of PDVH or Citgo Holding. All of Citgo Holding's assets were pledged as collateral for the debt incurred to fund the 2015 dividends.

**Answer:**     Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 114 pertaining to the amount of CITGO's dividends prior to 2015. Promissory Note Defendants admit that CITGO Holding issued $2.8 billion in debt with all of its assets pledged as collateral. Promissory Note Defendants deny the remaining allegations contained in Paragraph 114.

115.    The 2015 transaction to fund the dividends took place in two parts. First, on or about February 9, 2015 Citgo Holding issued $1.5 billion in high-yield bonds secured by 100% of Citgo's stock, five terminals, and substantially all other assets of Citgo Holding and the guarantors, which guarantors included the holding companies that owned Citgo's refineries. PDVSA Statement of Facts ¶ 471. Second, on or about February 12, 2015, Citgo Holding entered into a $1.3 billion loan facility, secured by 100% of Citgo's stock and 100% of the limited liability company interests in Citgo Holding's direct subsidiaries, as well as minority pipeline interests and terminals owned by those subsidiaries, and further guaranteed by Citgo Holding's "direct subsidiaries other than CITGO." PDVSA Statement of Facts ¶ 472.

**Answer:**     Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of whether the 2015 transaction funded a dividend. Promissory Note Defendants admit the remainder of the allegations contained in Paragraph 115.

116.    Then Citgo Holding transferred the funds to PDVH as a dividend—which Horacio Medina has referred to as a "fictitious" and "non-existent" dividend—despite a net income of under

$925 million that year, for a dividend ratio of nearly 3x net earnings. (By contrast, the dividend payout ratios of Phillips 66, Valero, and Marathon, three comparable large U.S. refiners, averaged 31% of their net earnings in 2015.) PDVH then declared a dividend and transferred the funds to PDVSA, which moved a significant portion of Citgo's value outside the United States—and the reach of creditors based in the United States, including the entities that had already been awarded billions of dollars in arbitration awards. The 2015 dividends were equivalent to over 6% of Venezuela's 2015 government revenue.

> **Answer:**    Promissory Note Defendants admit that Horacio Medina referred to a "fictitious" and "non-existent" dividend, but deny Plaintiff's characterization of these statements, particularly because these statements were made during Maduro's activity and prior to the Ad Hoc Board's control of PDVSA. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. The Ad Hoc Board manages PDVSA's assets from the United States and runs parallel to the Maduro Board. Promissory Note Defendants disavow Maduro and the Maduro Board and lack knowledge regarding actions taken by the Maduro Board. Accordingly, Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 116.

117.    Upon information and belief, the indebtedness incurred by these dividend payments took place without any appropriate assessment of PDVH's financial capacity to fund such

distributions, and without any consideration of the consequences for higher-priority claimants, such as creditors.

> **Answer:**   Promissory Note Defendants deny the allegations contained in Paragraph 117.

118.   The Venezuelan central bank was low on cash due to the 2014 collapse of oil prices. By the end of 2015, the cash reserves had fallen to approximately $16.4 billion, down approximately $5.7 billion from the beginning of 2014.

> **Answer:**   Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 118.

119.   This transfer of assets out of the U.S. was consistent with Venezuela's declared intent to refuse to pay arbitral awards. *See* January 2012 speech by Chávez ("[W]e will not recognize any decision" by an arbitral panel. "They are trying the impossible: to get us to pay them. We are not going to pay them anything."); July 2014 statements by Venezuelan "energy ministry officials" that PDVSA was considering selling Citgo to "reduce the government´s exposure to foreign litigation," because of "concerns in Caracas" that arbitration awards totaling approximately $10 billion "could be followed by US court litigation resulting in attachments and liens on Citgo assets in the US."

> **Answer:**   Promissory Note Defendants deny the allegations contained in Paragraph 119.

120.   In August 2017, the United States issued an executive order explicitly prohibiting "dividend payments or other distributions of profits to the Government of Venezuela from any entity owned or controlled, directly or indirectly, by the Government of Venezuela," an order

which would prevent another such dividend transaction. Executive Order 13808 of August 24, 2017, § 1(iv).

> **Answer:**    Promissory Note Defendants admit that Executive Order 13808 contains the quoted language, deny Plaintiff's characterization of the Executive Order, and further deny any allegations in Paragraph 120 inconsistent therewith.

121.    This executive order followed a July 2017 press release by OFAC announcing sanctions against certain Venezuelan officials and noting allegations that between 2004 and 2014, approximately $11 billion went missing from PDVSA.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 121.

122.    On August 1, 2019, after the PDVSA Ad Hoc Board took control, Citgo Holding issued $1.37 billion in 2024 notes secured by 100% of Citgo Holding's interest in Citgo, guaranteed by other subsidiaries, in a transaction governed by New York law. PDVH Statement of Facts ¶ 475. As discussed above, Citgo Holding is 100% owned by PDVH.

> **Answer:**    Promissory Note Defendants admit that the ad hoc Board of PDVSA controlled PDVSA as of August 1, 2019 but deny Plaintiff's insinuation that PDVSA controlled CITGO Holding or the issuance of the above-referenced notes. Promissory Note Defendants admit the remaining allegations contained in Paragraph 122.

123.    In 2019, industry press for the oil and gas industry noted that Citgo's dividends had contributed significantly to PDVSA and Venezuela. In 2019, Carlos Jordá, the President of Citgo,

and Luisa Palacios, President of Citgo's Board of Directors and member of PDVH's Board of Directors, stated in an interview that Citgo's dividends were used to pay Venezuela's debts.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 123.

124.    The U.S.-recognized Venezuelan government—the 2015 National Assembly—issued a Statute Governing the Transition to Democracy on February 5, 2019, which continues to be valid to this date and prohibits PDVH from making dividend payments to PDVSA while Maduro continues to illegitimately hold the presidency. Article 36 states that any assets recovered by state-owned companies—which includes any stake in subsidiaries such as Citgo Holding and Citgo—cannot be disposed of while Maduro remains in office illegitimately.

> **Answer:**    Promissory Note Defendants admit that the 2015 National Assembly issued a Statute Governing the Transition to Democracy on February 5, 2019. Promissory Note Defendants deny the remaining allegations contained in Paragraph 124.

125.    In 2022, Maduro stated that "PDVSA owns CITGO and its dividends belong to our country."

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 125. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. The Ad Hoc Board manages PDVSA's assets from the United States and runs parallel to the Maduro Board. Promissory Note Defendants disavow

Maduro and the Maduro Board and lack knowledge regarding actions taken by the Maduro Board.

C.     *Promissory Notes and the 2020 Bonds*

126.    In April 2007, PDVSA issued $3,000,000,000 in aggregate principal amount of notes due in April 2017 (the "April 2017 Notes"), and in October 2010 and January 2011, PDVSA issued $6,150,000,000 in aggregate principal amount of notes due in November 2017 (the "November 2017 Notes"). The principal on the November 2017 Notes was due in three equal installments of $2,050,000,000 due on November 2, 2015; November 2, 2016; and November 2, 2017. PDVH Statement of Facts ¶¶ 40–42.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 126.

127.    The April 2017 Notes and the November 2017 Notes (collectively the "2017 Notes") were denominated in U.S. dollars and governed by New York Law and New York forum-selection clauses, and the November 2017 Notes were deposited in New York, New York. PDVH Statement of Facts ¶¶ 46–48, 51.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 127.

128.    In June of 2016, PDVSA was facing the prospect of many more arbitration awards, as well as principal payments of $2 billion in November 2016, $3 billion in April 2017, and $2 billion in November 2017. Having made billions of dollars in dividend payments the previous year, PDVSA lacked the cash to manage its business in the ordinary course, and funded

infrastructure projects through promissory notes, including but not limited to the Note at issue here.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 128.

129. On September 16, 2016, an Exchange Offer was announced for the 2017 Notes, which had a collective outstanding principal balance of $7.1 billion. PDVH Statement of Facts ¶ 64.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 129.

130. On October 28, 2016 the Exchange Offer closed and the 2017 Notes were exchanged for 2020 bonds secured by a pledge of 50.1% of PDVH's equity in Citgo Holding. The validity of the exchange and pledge is the subject of ongoing litigation PDVH and PDVSA initiated in the United States District Court for the Southern District of New York in 2019.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 130.

131. A physical stock certificate for the collateral—50.1% of PDVH's equity in Citgo Holding—is held in a vault in New York. PDVH Statement of Facts ¶ 176.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 131.

132.    On November 30, 2016, the remaining 49.9% of PDVH's equity in Citgo Holding was pledged as collateral in exchange for a $1.5 billion loan from Rosneft, an oil company controlled by the Russian government.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 132.

133.    Over the span of a month, all of PDVH's assets were pledged.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 133.

134.    Yet PDVH did not receive value from either transaction. The Venezuelan Special Attorney General, José Ignacio Hernández, confirmed in 2019 that "PDV Holding, Inc. had no plausible financial reasons to establish the pledge in order to guarantee an obligation of its shareholder, unrelated to its line of business," and noted that "despite the fact that PDV Holding, Inc. signed the guarantee contract [the Pledge], in truth, it was PDVSA who undertook the obligation to establish that guarantee, for the benefit of its own public credit operation – which in no way benefitted PDV Holding, Inc." PDVH Statement of Facts ¶ 327.

> **Answer:**    Promissory Note Defendants admit that the referenced document contains the quoted language. Promissory Note Defendants deny the remaining allegations contained in Paragraph 134, including Plaintiff's characterization of the quoted language.

135.    Upon information and belief, these guarantees took place without any appropriate assessment of PDVH's financial capacity to fund them, and without any consideration of the consequences for higher-priority claimants, such as creditors.

>    **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 135.

### D.    Venezuela's Extensive Control Over PDVSA and PDVH

136.    As discussed above, for decades Venezuela has considered Citgo, PDVH, and PDVSA to be "an instrument of [the Venezuelan] people," after "dismantling" the "perverse structure" of the "iron 'Corporate Veil' that stood between international business and the control of the Venezuelan State" to create the "reality . . . that PDVSA now belongs to the People, [and] is perfectly aligned with the guidance of the Venezuelan State." Venezuela "emphasized that Citgo and all it has is 100% Venezuelan, when faced with some voices that have designated this company as American."

>    **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 136.

137.    PDVSA's articles of incorporation provide that PDVSA is a "state-owned company . . . under the form of a corporation, which will carry out and execute the policy issued in matters of hydrocarbons by the National Executive Branch." Article 1, PDVSA Articles of Incorporation. PDVSA's "company purpose [is] to plan, coordinate and supervise the actions of the companies it owns . . . in order to achieve an appropriate relationship between the hydrocarbon resources and the national economy, . . . and in general, to perform all those operations, contracts and commercial acts that are necessary or convenient for complying with the aforementioned object." Title I, Article Two, PDVSA Articles of Incorporation. Venezuela exerts de jure control over PDVSA.

**Answer:**    PDVSA's Articles of Incorporation speak for themselves and are the best evidence of their terms and/or contents; accordingly, Promissory Note Defendants respectfully refer the Court to PDVSA's Articles of Incorporation for a full and accurate recitation of their terms and/or contents and deny any allegations inconsistent therewith. Defendants deny that Venezuela exerts de jure control over PDVSA.

138.   Furthermore, a Venezuelan court recognized that, "although [PDVSA] is a company incorporated and organized in the form of a corporation, it is beyond doubt, and this is reaffirmed by the Constitution of the Bolivarian Republic of Venezuela, that it is framed within the general structure of the National Public Administration, . . . because of the unbreakable principle that the Venezuelan State reserves the exclusivity of oil activity[.] . . . [B]y reason of national economic, political and strategic sovereignty, the Venezuelan State will retain all [PDVSA's] actions." *See* Constitutional Chamber of the Supreme Tribunal of Justice, Decision No. 464 (Mar. 18, 2002). Similarly, in 2007, the same court reversed and remanded a case to the lower court with instructions to extend the "privileges" of the Venezuelan state to PDVSA. *See* Constitutional Chamber of the Supreme Tribunal of Justice, Decision No. 281 (Feb. 26, 2007).

**Answer:**    The referenced Court decisions speak for themselves and are the best evidence of their terms and/or contents; accordingly, Promissory Note Defendants respectfully refer the Court to these filings for a full recitation of their terms and/or contents and deny any allegations inconsistent therewith. Promissory Note Defendants deny the remaining allegations contained in Paragraph 138.

139.    PDVSA has explicitly stated that it views its subsidiaries as playing a role in advancing the political objectives of the Venezuelan government. On the "Subsidiaries" page of its website, PDVSA explicitly refers to the objectives of the Plan de la Patria (the six-year plan for Venezuela, approved by the national legislature) of ensuring the quality of life and availability of human talent committed to Venezuela, and affirms that the workforce of "the businesses and oil and non-oil subsidiaries plays a leading role in achieving the goals set by PDVSA".

**Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 139. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. The Ad Hoc Board manages PDVSA's assets from the United States and runs parallel to the Maduro Board. Promissory Note Defendants disavow Maduro and the Maduro Board and lack knowledge regarding actions taken by the Maduro Board.

140.    PDVSA has represented to the United States Securities and Exchange Commission that it is regulated and supervised by the National Executive of Venezuela.

**Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 140. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. The Ad Hoc Board manages PDVSA's assets from the

United States and runs parallel to the Maduro Board. Promissory Note

Defendants disavow Maduro and the Maduro Board and lack knowledge

regarding actions taken by the Maduro Board.

141.    Furthermore, every contract—national or international—to which PDVSA or any of

its subsidiaries (including PDVH, Citgo Holding, and Citgo) or joint companies is a party is subject

to prior review, approval, and/or validation by the President of PDVSA. *See* Venezuelan Official

Gazette 41.294, Resolution No. 164 (Dec. 6, 2017) (any lack of such prior review, approval, and/or

validation affects the existence and/or validity of the contract). Upon information and belief, the

President of PDVSA is a Venezuelan government official. It is not a typical corporate formality for

a parent's president to approve all contracts of a subsidiary—rather, it is one way in which PDVSA

exerted its domination and control over PDVH.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to
>
> form a belief as to the truth or falsity of the allegations contained in
>
> Paragraph 141. As set forth in the Motion to Vacate, the Ad Hoc Board of
>
> PDVSA, which is the only legitimate governing entity of PDVSA, was
>
> appointed by Interim President Juan Guaidó in 2019 pursuant to the
>
> Transition Statute. The Ad Hoc Board manages PDVSA's assets from the
>
> United States and runs parallel to the Maduro Board. Promissory Note
>
> Defendants disavow Maduro and the Maduro Board and lack knowledge
>
> regarding actions taken by the Maduro Board.

142.    In April 2018, Maduro issued Decree No. 44, which empowered the Venezuelan

Minister of Petroleum to take a variety of actions to control PDVSA and its subsidiaries— including

PDVH, Citgo Holding, and Citgo—such as creating, eliminating, or making changes to PDVSA

and its affiliates; creating, eliminating, modifying, or centralizing the management and administration of PDVSA and its affiliates; and ordering the amendment of the by-laws of the state-owned oil companies. *See* Venezuelan Official Gazette 440.859, Decree No. 44 (Apr. 12, 2018).

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 142. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. The Ad Hoc Board manages PDVSA's assets from the United States and runs parallel to the Maduro Board. Promissory Note Defendants disavow Maduro and the Maduro Board and lack knowledge regarding actions taken by the Maduro Board.

### E.    *Venezuela and PDVSA Exercise Control Over the Boards of Directors of PDVH and Citgo*

143.    For decades, there has been overlap between the Boards of Directors of PDVSA and PDVH. PDVSA's board members are appointed by decree by the President of Venezuela, and PDVH Directors have listed their address as PDVSA's headquarters in Venezuela. This overlap can, and has, served as a mechanism for abusing the corporate form.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 143.

144.    Venezuelan presidents have directly appointed the president of Citgo—ignoring the boards of PDVSA, PDVH, and Citgo Holding—on multiple occasions. For example, in April and November 2017, Maduro signed decrees appointing first José Pereira, then Asdrubal Chávez, as interim presidents of Citgo, and delegating to the Venezuelan Minister of Petroleum the

responsibility of swearing them in. *See* Venezuelan Official Gazette 41.138, p. 435.247 (Apr. 26, 2017); 41.284, pp. 438.823-438.824 (Nov. 22, 2017). Both decrees state that the president is using the authority conferred by Article 236 of the Constitution (to "appoint and remove those public officials whose designation is attributed to him by this Constitution and the Law"). They also cite the Statute of Public Function's article 20, which classifies as high-level public officials "general directors, directors and other public officials of similar level at the service of the Presidency of the Republic, Executive Vice-presidency and Ministries."

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 144.

145.    When Maduro announced his appointment of Chávez as the Citgo president on November 22, 2017 (the day after the Venezuelan government arrested the prior president, José Pereira, and five top executives of Citgo, referred to as the "Citgo Six") during a broadcast on state television, he disregarded corporate formalities and said, "I have decided to appoint as president of CITGO, Venezuelan firm in the United States, comrade Adrubal Chávez… Asdrubal Chávez, from Barinas, is going directly [to serve] as president of CITGO now, to restructure CITGO, to recover CITGO, to strengthen CITGO in the United States, which is a firm that is ours, Venezuelan capital, Venezuelan firm." It took a full week, until November 29, 2017, for the Citgo board of directors to announce the appointment of Chávez.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 145.

146.    The practice of direct appointment of executives and directors of PDVSA's subsidiaries, which reflects a blatant and deliberate disregard of corporate formalities and appropriate corporate governance norms, continued under the National Assembly-controlled government. On February 13, 2019, the National Assembly instructed the board of PDVH to "carry out all the necessary actions with the purpose of designating the new board of the subsidiaries of PDV Holding, Inc., of CITGO Holding, Inc. and of the Firm CITGO Petroleum corporation, which will be integrated by the following persons," then proceeded to list the officials that would eventually be designated. Interim President Guaidó announced the decision through a Twitter post where he stated, "From the @AsambleaVE [National Assembly] we designated the new board of CITGO, formed by Luisa Palacios, Ángel Olmeta, Édgar Rincón, Luis Urdaneta, Andrés Padilla and Rick Esser." On February 15, 2019, two days after the National Assembly issued its authorization and specifically appointed the board of Citgo, ignoring corporate formalities and distinct identities of each subsidiary, each parent company ratified the mandates of the National Assembly by appointing such individuals by written consent.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or the falsity of the allegations concerning the contents of Interim President Guaidó's Twitter post. Promissory Note Defendants deny the remaining allegations contained in Paragraph 146.

147.    The Citgo Six were arrested for signing a contract to refinance loans without the explicit approval of the Venezuelan government. The "most serious" element of the charge was that "the subsidiary itself [i.e., Citgo] was being offered as collateral, compromising the own patrimony of Venezuela." Specifically, the Citgo Six were charged with—and sentenced for— violating articles 54 and 72 of the Organic Law Against Corruption ("OLAC") and article 37 read together

with article 29, paragraph 9 of the Law Against Organized Crime and the Financing of Terrorism ("LAOFT"). Article 54 of the OLAC states that public officials are obligated to denounce acts of corruption whenever they have had knowledge of these acts because of their work. Article 29 of the LAOFT says that using a public position to participate in organized crime activities is an aggravating factor. Thus, the Venezuelan executive and judicial branches both considered Citgo executives to be Venezuelan public officials, who were obligated to seek approval from the Venezuelan government for Citgo's refinancing transactions such that failing to seek that approval constituted a crime, rather than a decision based on the corporate governance norms and fiduciary duties of directors of a Delaware corporation.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 147.

## Overlapping Directors

148.    Upon information and belief, over a period of decades a majority of members of the board of PDVH also served on the board of PDVSA, often concurrently.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 148.

149.    Upon information and belief, in the 1990s, Luis Urdaneta was Executive Vice President of PDVSA and a Director of PDVH; Alonso Velasco was a Director of PDVH and a Director of PDVSA; and Theodore Helms was a Director of PDVH and the self-described New York-based financial representative for PDVSA.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in

Paragraph 149. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. Promissory Note Defendants lack knowledge regarding actions preceding the 2019 appointment of the Ad Hoc Board.

150.    Upon information and belief, in the years between 2000 and 2004, Aires Barreto served as a Director of PDVH and a Director of PDVSA; Carlos Jordá, presently the CEO of Citgo, served as a Director of PDVH and held various positions at PDVSA; and Oswaldo Contreras, the CEO of Citgo from 2000 to 2003, also served as a Director of PDVH and held various positions at PDVSA.

**Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 150. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. Promissory Note Defendants lack knowledge regarding actions preceding the 2019 appointment of the Ad Hoc Board.

151.    In early 2003 Déster Rodriguez served concurrently as a Director of PDVSA, a Director of Citgo, and a member of the board of PDVH; upon information and belief his tenure on the board of PDVSA lasted until late 2008.

**Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 151. As set forth in the Motion to Vacate, the Ad Hoc Board of

PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. Promissory Note Defendants lack knowledge regarding actions preceding the 2019 appointment of the Ad Hoc Board.

152.    Similarly, in early 2005 Eudomario Carruyo served concurrently as a Director of PDVSA, a Director of Citgo, and a member of the board of PDVH; his tenure on the board of PDVSA lasted until late 2008. According to Delaware tax records, Carruyo served as a Director of PDVH during the tax years 2006-2010.

**Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 152. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. Promissory Note Defendants lack knowledge regarding actions preceding the 2019 appointment of the Ad Hoc Board.

153.    In early 2005, Alejandro Granado served concurrently as Vice President of PDVSA; President of Citgo; and President of PDVH, PDV USA, PDV Chalmette, PDV America, and PDV Caribe. Upon information and belief, his tenure on the board of PDVSA lasted until late 2008.

**Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 153. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was

appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. Promissory Note Defendants lack knowledge regarding actions preceding the 2019 appointment of the Ad Hoc Board.

154.    According to Delaware tax records, Ivan Hernandez served as a Director of PDVH for the 2004 tax year. Upon information and belief, he served concurrently as the Vice President of Refining at PDVSA.

**Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 154. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. Promissory Note Defendants lack knowledge regarding actions preceding the 2019 appointment of the Ad Hoc Board.

155.    Upon information and belief, Nelson Martinez served concurrently as a Director of PDVH and President of PDVSA in 2005; Luis Marin served as a Director of PDVSA, the head of Citgo, and a Director of PDVH in the 2003-2005 time frame; Feliz Rodriguez served as a Vice President of PDVSA and a Director of PDVH in 2006-2007; and Asdrubal Chávez served as a Director of PDVH in 2009-2014, and held a variety of positions at PDVSA from 2003-2014.

**Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 155. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the

Transition Statute. Promissory Note Defendants lack knowledge regarding actions preceding the 2019 appointment of the Ad Hoc Board.

156.    Upon information and belief, Victor Aular served as a Director of PDVH, a Director of Citgo, and from 2011–2014 an Internal Director of PDVSA.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 156. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. Promissory Note Defendants lack knowledge regarding actions preceding the 2019 appointment of the Ad Hoc Board.

157.    Orlando Enrique Chacin served as a Director of PDVH and a Director of Citgo. From 2011–2017 he served as an Internal Director of PDVSA, and from 2015–2017 he was PDVSA's Vice President of Exploration and Production. In October 2016, Mr. Chacin was one of only three members of the board of PDVH. PDVH Statement of Facts ¶ 94. Mr. Chacin is also a registered foreign agent of PDVSA in connection with his work with PDVH.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 157. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. Promissory Note Defendants lack knowledge regarding actions preceding the 2019 appointment of the Ad Hoc Board.

158.    Jesús Enrique Luongo served as a Director of PDVH and a Director of Citgo. From 2011–2016 he served as an Internal Director of PDVSA, and from 2015–2017 he was PDVSA's Vice President of Refining, Trade, and Supply. On October 28, 2016, Mr. Luongo signed the pledge agreement for 50.1% of PDVH's equity in Citgo Holding, as part of the Exchange Offer, on behalf of PDVH. PDVH Statement of Facts ¶ 103. On that date Mr. Luongo was simultaneously the President of PDVH (and one of only three board members) and the PDVSA Vice President of Refining, Trade and Supply. PDVH Statement of Facts ¶¶ 94, 111. Mr. Luongo is also a registered foreign agent of PDVSA in connection with his work with PDVH.

>    **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 158. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. Promissory Note Defendants lack knowledge regarding actions preceding the 2019 appointment of the Ad Hoc Board.

159.    Upon information and belief, Anton Rafael Castillo served as a Director of PDVH and, from 2014–2017, an Internal Director of PDVSA. In October 2016, Mr. Castillo was one of only three members of the board of PDVH, while serving simultaneously as a Director of PDVSA. PDVH Statement of Facts ¶ 94.

>    **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 159. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was

appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. Promissory Note Defendants lack knowledge regarding actions preceding the 2019 appointment of the Ad Hoc Board.

160.    According to Delaware tax records, Eulogio Del Pino Díaz served as a Director of PDVH from 2008–2014. He was President of PDVSA from 2014–2017, and upon information and belief in 2016 he served concurrently as the President of PDVSA, the President of Citgo Holding, and the Minister of Petroleum of Venezuela.

**Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 160. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. Promissory Note Defendants lack knowledge regarding actions preceding the 2019 appointment of the Ad Hoc Board.

161.    Also in the 2011–2019 time period, upon information and belief, Asdrubal Chávez held a variety of positions at PDVSA. He was appointed the President of Citgo directly by Maduro in 2017. Maduro did not first propose Chávez to the boards of PDVH or Citgo Holding or otherwise follow corporate formalities. According to Delaware tax records, Chávez served as a Director of PDVH from 2008–2013.

**Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 161. As set forth in the Motion to Vacate, the Ad Hoc Board of PDVSA, which is the only legitimate governing entity of PDVSA, was

appointed by Interim President Juan Guaidó in 2019 pursuant to the Transition Statute. Promissory Note Defendants lack knowledge regarding actions preceding the 2019 appointment of the Ad Hoc Board.

162.    Upon information and belief, when the PDVSA Ad Hoc Board appointed a new board of directors of PDVH, the overlap continued. For example, Exeario Boscan served as a Director on the PDVSA Ad Hoc Board in 2021, and a Director of PDVH from 2022–2024; and Carlos Jordá, the present CEO of Citgo who served as a Director of PDVH and held various positions at PDVSA in the early 2000s, served as a Director of PDVH from 2023–2024.

> **Answer:**    Promissory Note Defendants admit the allegations contained in the second sentence of Paragraph 162, but deny that service by a person on different boards at different times constitutes "overlap". Promissory Note Defendants deny the remaining allegations of Paragraph 162.

163.    PDVH reported in its September 2022 FARA filing that Carlos Jordá had rendered services directly in furtherance of the interests of the PDVSA Ad Hoc Board.

> **Answer:**    Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 163.

## IV.    PDVSA Is an Alter Ego of Venezuela

164.    The Third Circuit has determined that PDVSA is the alter ego of Venezuela no matter when the inquiry is brought—that is, PDVSA under the control of the Maduro-appointed board is an alter ego of Venezuela, and PDVSA under the control of the PDVSA Ad Hoc Board is an alter ego of Venezuela. *Crystallex*, 932 F.3d at 152 ("[I]f the relationship between Venezuela and PDVSA cannot satisfy the Supreme Court's extensive-control requirement, we know nothing

that can."); *OI Eur. Grp.*, 73 F.4th at 176 ("For the second time in five years, we conclude that PDVSA is the alter ego of Venezuela."). The Supreme Court has repeatedly declined to review the Third Circuit's determination.

> **Answer:**    Promissory Note Defendants admit that the *Crystallex* and *OI Eur. Grp.* opinions contain the quoted text. Promissory Note Defendants deny the remaining allegations contained in Paragraph 164.

165.    Accordingly, PDVSA is, and continues to be, an alter ego of Venezuela under both Maduro and the U.S.-recognized National Assembly.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 165.

166.    Under both Maduro and the U.S.-recognized National Assembly, Venezuela maintains extensive economic control over PDVSA, treating PDVSA's assets as its own. For example, upon information and belief the Maduro government has caused PDVSA to sell oil products at below-market prices for political ends. Similarly, as Medina acknowledged in an interview, the U.S.-recognized National Assembly used funds from the PDVSA Ad Hoc Board to compensate lawyers representing Venezuela. Economic control of PDVSA remains engrafted in Venezuela's Constitution, resulting in substantial control over PDVSA and the Venezuelan oil industry.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 166.

167.    Under both Maduro and the U.S.-recognized National Assembly, Venezuela profits from PDVSA's operations, as the Republic is the sole shareholder of PDVSA. As discussed above,

PDVSA pays high royalties to Venezuela, and the PDVSA Ad Hoc Board's funds have been used to compensate Venezuela's lawyers.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 167.

168.    Under both Maduro and the U.S.-recognized National Assembly, Venezuelan government officials manage PDVSA, having a hand in its daily affairs. For example, the Maduro government has appointed members of PDVSA's Board (including government officials, such as the Minister of Petroleum) and the president of Citgo. Similarly, the U.S.-recognized National Assembly has exercised its powers under the Transition Statute to appoint the Ad Hoc Board of PDVSA and to appoint directly the board of Citgo.

> **Answer:**    Promissory Note Defendants admit that the National Assembly exercised its powers under the Transition Statute to appoint the Ad Hoc Board of PDVSA. Defendants deny the remaining allegations contained in Paragraph 168.

169.    Under both Maduro and the U.S.-recognized National Assembly, Venezuela is the real beneficiary of PDVSA's conduct, as evidenced by, among other things, Venezuela's use of PDVSA property (including airplanes) for government activities, Venezuela's use of PDVSA petroleum to support Venezuelan foreign policy (including with respect to Cuba and China), PDVSA's website's declaration that one of its strategic objectives is to "[s]upport the geopolitical positioning of Venezuela internationally," and the PDVSA Ad Hoc Board's website's declaration that its functions include "[t]he promotion of policies that foster the sustainable development of [Venezuela's] oil sector."

> **Answer:**    Promissory Note Defendants admit that the PDVSA Ad Hoc Board's website contains the quoted text, but deny Plaintiff's characterizations of the

quoted text. Promissory Note Defendants deny the remaining allegations contained in Paragraph 169.

170.    Finally, adherence to separate identities between Venezuela and PDVSA would entitle Venezuela to benefits in U.S. courts while avoiding its obligations. PDVSA, and by extension Venezuela, derives significant benefits from the U.S. judicial system. The PDVSA 2020 bonds are backed by the common stock and underlying assets of U.S.-based corporations; accordingly, the dispute stemming from default is being resolved through the U.S. legal system. *See Petróleos de Venezuela, S.A.,* Case No. 1:19-cv-10023 (S.D.N.Y.). Similarly, Promissory Note Defendants explicitly elected to resolve any disputes arising from the Note Agreement or Note in U.S. courts when they consented, "irrevocably and unconditionally," to the "exclusive jurisdiction of any New York State court or federal court of the United States of competent jurisdiction sitting in the County of New York, State of New York, and any appellate court from any thereof" in any action or proceeding arising out of or relating to the Note Agreement or the Notes. *See* Ex. 1 at 40, Sections 9.15(a)–(b). Any outcome where a creditor before the Court is not paid means that Venezuela and PDVSA have avoided their obligations.

**Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 170.

## V.    PDVH Is an Alter Ego of PDVSA

### A.    *PDVH Is Extensively Controlled by PDVSA and Venezuela And Its Corporate Form Is Used to Facilitate Fraud or Injustice*

171.    Venezuela operates its alter ego PDVSA, PDVSA's alter ego PDVH, Citgo Holding, and Citgo as a single economic unit, exerting significant and extensive control over each level to operate PDVH as a sham entity and facilitate fraud or injustice.

> **Answer:**     Promissory Note Defendants deny the allegations contained in Paragraph
> 171.

172.    Under both Maduro and the U.S.-recognized National Assembly, the Venezuelan government has bypassed the boards of PDVSA, PDVH, and Citgo Holding to directly appoint the President and/or board of directors of Citgo.

> **Answer:**     Promissory Note Defendants deny the allegations contained in Paragraph
> 172.

173.    Under both Maduro and the U.S.-recognized National Assembly, the profits of PDVH have been used to fund sovereign functions of Venezuela rather than for commercial purposes or to pay legitimate third-party creditors. PDVH cannot pay its commercial debts when they are due.

> **Answer:**     Promissory Note Defendants deny the allegations contained in Paragraph
> 173.

174.    PDVH's separate corporate existence from PDVSA is a legal fiction: PDVSA and PDVH operate as a single economic unit, and PDVH's profits are siphoned to PDVSA. PDVH is a sham entity used by PDVSA for the purpose of defrauding creditors by advancing PDVSA's (and in turn, Venezuela's) interests while avoiding its obligations and the obligations of its subsidiaries, and materially assisting PDVSA with avoiding its commercial obligations.

> **Answer:**     Promissory Note Defendants deny the allegations contained in Paragraph
> 174.

### B.    Under the *Bancec* Standard, PDVH Is an Alter Ego of PDVSA

175.    PDVSA, and PDVSA's alter ego Venezuela, exert significant and extensive economic control over PDVH beyond the control attendant to equity ownership in the entity. As

discussed above, the PDVSA Board overlaps with, and controls, PDVH's Board; Venezuelan and PDVSA authorities have issued public statements regarding the lack of a corporate veil between Citgo, Citgo Holding, PDVH, PDVSA, and Venezuela; PDVH has issued outsized dividends for the benefit of PDVSA and Venezuela that rendered PDVSA, PDVH and their subsidiaries undercapitalized and unable to satisfy their financial obligations in the ordinary course of business; Venezuelan governmental officials have the authority to review, approve, and veto PDVH's transactions in a manner inconsistent with ordinary principles of corporate governance; and PDVH pledged 100% of its assets with no value received, for the benefit of PDVSA.

>**Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 175.

176.    PDVSA uses PDVH's property as its own and ignores any commercial purpose for such assets. As discussed above, and confirmed by public statements from Venezuela and PDVSA, all of PDVH's profits are directed by PDVSA away from PDVH and to PDVSA, not for commercial purposes, but for the political and social uses of PDVSA and the Republic.

>**Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 176.

177.    PDVSA ignores PDVH's separate status and ordinary corporate formalities and exercises close political control over PDVH, managing PDVH and its subsidiaries and directing and having a hand in their daily affairs—functions that ought properly to be exercised by management of PDVH and of its subsidiary entities. PDVSA's alter ego, Venezuela, directly appointed the President of Citgo on multiple occasions, and the Venezuelan National Assembly directly appointed the board of Citgo, demonstrating that the separate status of PDVH and Citgo, as well as ordinary

corporate formalities, were ignored. Upon information and belief, some of the corporate records and/or corporate formalities relating to corporate records are incomplete.

> **Answer:**     Promissory Note Defendants deny the allegations contained in Paragraph 177.

178.   PDVSA deprives PDVH of independence from close political control. As discussed above, for decades there has been extensive overlap between the Boards of Directors of PDVSA and PDVH. PDVSA has used its influence over PDVH's Directors to interfere with PDVH's ordinary business affairs, such as when concurrent Directors of PDVSA and PDVH caused PDVH to pledge 50.1% of its assets to secure PDVSA's notes issuance in connection with an exchange, without receiving any value for PDVH in return, in October 2016. Furthermore, the Venezuelan government's direct appointment of the President and board of Citgo has deprived PDVH of the independence to appoint the board of Citgo Holding, which in turn appoints the board of Citgo.

> **Answer:**     Promissory Note Defendants deny the allegations contained in Paragraph 178.

179.   PDVH's ordinary business decisions, such as its contracts, must be approved by the President of PDVSA, a Venezuelan political actor. For example, as discussed above, Venezuelan and PDVSA authorities have issued public statements regarding the deliberate lack of a corporate veil between Citgo, Citgo Holding, PDVH, PDVSA, and Venezuela; PDVH has issued outsized dividends for the benefit of PDVSA; and PDVH pledged 100% of its assets, with no value received, for the benefit of PDVSA. These actions have left PDVH, and its subsidiaries, undercapitalized and unable to satisfy obligations to creditors, as well as materially assisting PDVSA to avoid its commercial obligations to creditors.

**Answer:**        Promissory Note Defendants deny the allegations contained in Paragraph 179.

180.    PDVSA also issues policies or directives that cause PDVH to act directly on behalf of PDVSA and the Republic, so that PDVSA and Venezuela are the real beneficiaries of PDVH's conduct. For example, as discussed above, PDVH is registered with the Department of Justice as a foreign agent acting on behalf of the PDVSA Ad Hoc Board and has acted directly for PDVSA's benefit by, among other things, pledging the majority of its assets for PDVSA's benefit, without any corresponding business justification to PDVH.

**Answer:**        Promissory Note Defendants deny the allegations contained in Paragraph 180.

181.    Furthermore, adherence to separate entities would entitle PDVH, and by extension PDVSA, to benefits in United States courts while avoiding its obligations. As the Third Circuit has held, "[i]t is . . . clear from the record that PDVSA, and by extension Venezuela, derives significant benefits from the U.S. judicial system. . . . it is probable the U.S. legal system is the backstop that gives substantial assurance to investors who buy PDVSA's debt." *Crystallex*, 932 F.3d at 149.

**Answer:**        Promissory Note Defendants deny the allegations contained in Paragraph 181.

182.    Finally, as discussed above, adherence to separate identities between PDVSA and PDVH would work a fraud or injustice. Adherence to separate identities between PDVSA and PDVH would entitle PDVSA, as the agency and instrumentality of a foreign state, and Venezuela, as a foreign state, to benefits in United States courts while avoiding their obligations.

**Answer:**        Promissory Note Defendants deny the allegations contained in Paragraph 182.

183.   PDVH's separate corporate existence from PDVSA is a legal fiction: PDVSA and PDVH operate as a single economic unit. PDVH is a sham entity used by PDVSA for the purpose of defrauding creditors by advancing PDVSA's (and in turn, Venezuela's) interests while avoiding its financial obligations.

**Answer:**   Promissory Note Defendants deny the allegations contained in Paragraph 183.

### C.   Under Delaware Law, PDVH Is an Alter Ego of PDVSA

184.   In the alternative, where Delaware law determines whether to pierce the veil of a Delaware corporation, PDVH is, and has been at all relevant times, an alter ego of PDVSA.

**Answer:**   Promissory Note Defendants deny the allegations contained in Paragraph 184.

185.   Delaware courts expressly permit creditors to impose liability on subsidiaries for the liabilities of the parent.

**Answer:**   Paragraph 185 states conclusions or characterizations of law to which no response is required. To the extent any response is required, Promissory Note Defendants deny the allegations contained in Paragraph 185.

186.   At all relevant times, PDVSA and PDVH operated as one entity.

**Answer:**   Promissory Note Defendants deny the allegations contained in Paragraph 186.

187.   PDVSA left PDVH, and its subsidiaries, undercapitalized by causing PDVH to transfer billions of dollars of Citgo dividends to PDVSA, which in turn siphoned funds to Venezuela without any corporate entity in the chain paying creditors, thereby degrading a substantial portion of PDVH's value and commingling its funds with PDVSA's, and depriving

PDVH of the financial ability to distribute its own dividend payments or to satisfy its financial obligations. PDVH knew, should have known, and/or recklessly and/or deliberately disregarded that PDVSA was scheming to avoid commercial obligations to creditors by dominating and controlling the whole corporate enterprise, including PDVH, to send funds to Venezuela without satisfying any commercial debts, and/or to block funds from flowing up to PDVSA and/or Venezuela to prevent satisfaction of any commercial debts.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 187.

188.    Together with the 2016 pledges of all of PDVH's assets (49.9% in October 2016 and 50.1% in November 2016), this dividend scheme was part of a strategic effort on the part of PDVSA and Venezuela to ensure that their creditors could not recover the money they were owed.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 188.

189.    PDVSA failed to observe corporate formalities when its President reviewed PDVH's contracts, as set forth in Resolution No. 164, and when Decree No. 44 authorized the Venezuelan Minister of Petroleum to make changes to PDVH and modify or centralize PDVH's management and administration, in disregard of ordinary channels of corporate governance. Moreover, upon information and belief, some of the corporate records and/or corporate formalities are incomplete.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 189.

190.   The 2015 dividend transaction, and the 2016 pledges of 100% of PDVH's assets within a month, further illustrate that PDVH is a façade for PDVSA, as does PDVH's registration with the Department of Justice as a foreign agent of PDVSA.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 190.

191.   PDVSA abused the corporate form to perpetrate a wrong or injustice. PDVH's separate corporate existence from PDVSA is a legal fiction: PDVSA and PDVH operate as a single economic unit, and PDVH is used as a conduit for its profits to be siphoned to PDVSA without respect to its corporate separateness, or the rights of any creditors. PDVH is a sham entity used by PDVSA for the purpose of defrauding creditors by advancing PDVSA's (and in turn, Venezuela's) interests while avoiding its obligations.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 191.

192.   Piercing the veil from PDVSA to PDVH would not impair the legitimate expectations of any adversely affected shareholders who are not responsible for the conduct that gave rise to the claim. PDVSA owns 100% of the shares of PDVH, so there are no shareholders who are not responsible for the improper conduct that supports veil-piercing. Allowing the veil to be pierced from PDVSA to PDVH would not establish a precedent troubling to shareholders generally.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 192.

193.   Innocent third parties with claims on PDVH's assets will not be harmed if the Court pierces the veil between PDVSA and PDVH. The only third parties with claims on PDVH's assets

of whom Plaintiff is aware are those who hold the 2020 PDVSA bonds, whose alleged interests—ably represented in the United States District Court for the Southern District of New York—would be senior if proven.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 193.

194.    PDVSA has exercised significant and extensive dominion and control over PDVH, as described above.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 194.

195.    As a creditor of PDVSA, Plaintiff was harmed by PDVSA's exercise of dominion and control over PDVH. PDVSA first stripped all of its subsidiaries of value without paying creditors in total disregard to duties it owed to all of the residual beneficiaries when it could not pay its debts in the ordinary course of business. Then, since 2019, the PDVSA Ad Hoc Board has blocked its subsidiaries from distributing any dividends. Equity will not countenance such an unjust result, where assets were first stripped and then blocked from distribution in the ordinary course, thereby frustrating creditors. It is an abuse of the corporate form and U.S. law that benefits the wrongdoers, who benefit from limited liability while simultaneously avoiding legitimate, commercial (non-sovereign) debts.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 195.

196.    The public convenience would be served by allowing the veil to be pierced from PDVSA to PDVH because New York's recognized interest as a national and international center of finance and commerce would be strengthened if purchasers of promissory notes gained

confidence that the issuers of the notes could not render the commercial paper worthless by shifting their assets to affiliated entities and defaulting on the notes.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 196.

197.   The wrongful conduct engaged in by PDVSA is extensive and severe.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 197.

198.   Plaintiff comes before the Court with clean hands and has engaged in no wrongful conduct sufficient to bar it from obtaining equitable relief. Plaintiff properly purchased a noteholder's rights in a promissory note through an assignment, and complied with all requirements for such an assignment as set forth in the terms of the note agreement governing the promissory notes. Plaintiff now brings this breach of contract action in the court where all parties had consented to jurisdiction and seeks to pierce the veil between PDVSA and PDVH in order to exercise the remedies available to it as a judgment creditor.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 198.

199.   No other remedies are practically available to Plaintiff at law or in equity to recover the debt owed to it by PDVSA. Multiple judges have recognized the extent of PDVSA's recalcitrance as a judgment debtor, and vast resources have been expended by courts and creditors in pursuit of the debts owed to them by PDVSA. Upon information and belief, no creditors have recovered anything from PDVSA in years.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 199.

## CLAIMS FOR RELIEF
### COUNT I
### Breach of Contract
### (against PDVSA)

200.     Plaintiff repeats and realleges the allegations set forth above and herein.

**Answer:**     Promissory Note Defendants repeat the answers set forth above as if set forth herein.

201.     The Note Agreement and Note are legally enforceable agreements by and between Plaintiff and PDVSA.

**Answer:**     Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of Paragraph 201.

202.     Plaintiff performed all of its obligations under the Note Agreement and Note.

**Answer:**     Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of Paragraph 202.

203.     Pursuant to the terms of the Note Agreement and Note, PDVSA is obligated to pay principal and interest, but PDVSA has failed to make the required payments of principal and interest to Plaintiff.

**Answer:**     Promissory Note Defendants deny the allegations contained in Paragraph 203.

204.     By reason of the foregoing, PDVSA has breached its contractual obligations to Plaintiff and PDVSA is liable to Plaintiff for the amount of $175,000,108 in principal, plus 8.5% default interest from December 29, 2017 to the present date of September 30, 2024 in the amount of $100,538,761, for a total of $275,538,869 plus fees and other costs. For each day between September 30, 2024 and the date of entry of judgment, these sums will continue to accrue interest at the contractual default rate of 8.5% per annum, or $64,166 per day.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 204.

205.    PDVSA is also liable to Plaintiff for 9% statutory interest pursuant to New York C.P.L.R. § 5001 from June 29, 2019 to the present date of September 30, 2024 in the amount of $82,849,366. For each day between September 30, 2024 and the date of entry of judgment, these sums will continue to accrue interest at the statutory interest rate of 9% per annum, or $20,429 per day.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 205.

206.    PDVSA's breach also entitles Plaintiff to all costs and expenses, including reasonable attorneys' fees and court costs, incurred in collecting or otherwise enforcing the Note Agreement.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 206.

207.    As of September 30, 2024, PDVSA is liable to Plaintiff for $358,388,235, plus fees and other costs, a sum which will accrue interest at the rate of $84,595 per day for each day between September 30, 2024 and the date of entry of judgment.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 207.

208.    All sums owed will continue to accrue interest post-judgment at the contractual post-judgment rate of 8.5% per annum.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 208.

## COUNT II
### Breach of Contract
### (against Petróleo)

209.    Plaintiff repeats and realleges the allegations set forth above and herein.

**Answer:**    Promissory Note Defendants repeat and reallege their responses to the allegations set forth above as if fully set forth herein.

210.    The Note Agreement (which includes the Guarantee) and Note are legally enforceable agreements by and between Plaintiff and Petróleo.

**Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 210.

211.    Plaintiff performed all of its obligations under the Note Agreement and Note.

**Answer:**    Promissory Note Defendants do not have information and knowledge sufficient to form a belief as to the truth or falsity of Paragraph 211.

212.    Pursuant to the terms of the Guarantee, Petróleo is liable for payments under the Note Agreement and Note. Petróleo is obligated to pay principal and interest as guarantor, but Petróleo has failed to make the required payments of principal and interest to Plaintiff.

**Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 212.

213.    By reason of the foregoing, Petróleo has breached its contractual obligations to Plaintiff and Petróleo is liable to Plaintiff for the amount of $175,000,108 in principal, plus 8.5% default interest from December 29, 2017 to the present date of September 30, 2024 in the amount of $100,538,761, for a total of $275,538,869 plus fees and other costs. For each day between September 30, 2024 and the date of entry of judgment, these sums will continue to accrue interest at the contractual default rate of 8.5% per annum, or $64,166 per day.

**Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 213.

214.    Petróleo is also liable to Plaintiff for 9% statutory interest pursuant to New York C.P.L.R. § 5001 from June 29, 2019 to the present date of September 30, 2024 in the amount of $82,849,366. For each day between September 30, 2024 and the date of entry of judgment, these sums will continue to accrue interest at the statutory interest rate of 9% per annum, or $20,429 per day.

**Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 214.

215.    Petróleo's breach also entitles Plaintiff to all costs and expenses, including reasonable attorneys' fees and court costs, incurred in collecting or otherwise enforcing the Note Agreement.

**Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 215.

216.    As of September 30, 2024, Petróleo is liable to Plaintiff for $358,388,235, plus fees and other costs, a sum which will accrue interest at the rate of $84,595 per day for each day between September 30, 2024 and the date of entry of judgment.

**Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 216.

217.    All sums owed will continue to accrue interest post-judgment at the contractual post-judgment rate of 8.5% per annum.

**Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 217.

**COUNT III**
**Declaratory Relief**
**(against PDVH)**

218.    Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

**Answer:**   Promissory Note Defendants repeat and reallege their responses to the allegations set forth above as if fully set forth herein.

219.  Plaintiff is a creditor of PDVSA.

**Answer:**   Promissory Note Defendants deny the allegations contained in Paragraph 219.

220.  Pursuant to the *Bancec* test, PDVH is an alter ego of PDVSA, and as an alter ego of PDVSA, PDVH is liable for the sums PDVSA owes Plaintiff.

 a) At all relevant times, PDVSA exercised significant and extensive economic control over PDVH.

 b) At all relevant times, PDVSA used PDVH's property as its own, and PDVH's profits went to PDVSA.

 c) At all relevant times, PDVSA ignored PDVH's separate status and ordinary corporate formalities.

 d) At all relevant times, PDVSA deprived PDVH of independence from close political control.

 e) Based on the domination of PDVH by PDVSA, it is reasonable to infer that PDVH had to obtain approval from PDVSA for material business decisions, including its contracts, from the President of PDVSA, a Venezuelan political actor.

 f) At all relevant times, PDVSA issued policies or directives that caused PDVH to act directly on PDVSA and the Republic's behalf.

 g) Adherence to separate identities between PDVSA and PDVH would perpetuate a fraud or injustice.

**Answer:**       Promissory Note Defendants deny the allegations contained in Paragraph 220.

221.    Pursuant to Delaware law, PDVH is an alter ego of PDVSA, and as such, PDVH is liable for the sums PDVSA owes Plaintiff.

a)   At all relevant times, PDVSA and PDVH operated as one entity.

b)   PDVSA left PDVH, and its subsidiaries, undercapitalized by causing PDVH to transfer billions of dollars of Citgo dividends to PDVSA, which in turn siphoned funds to Venezuela without any corporate entity in the chain paying creditors, thereby degrading a substantial portion of PDVH's value and commingling its funds with PDVSA's, and depriving PDVH of the financial ability to distribute its own dividend payments or to satisfy its financial obligations. PDVH knew, should have known, and/or recklessly and/or deliberately disregarded that PDVSA was scheming to avoid commercial obligations to creditors by dominating and controlling the whole corporate enterprise, including PDVH, to send funds to Venezuela without satisfying any commercial debts, and/or to block funds from flowing up to PDVSA and/or Venezuela to prevent satisfaction of any commercial debts. PDVSA failed to observe corporate formalities when the President of PDVSA reviewed PDVH's contracts. PDVH's officers and reictors were not acting in the best interest of all residual beneficiaries of their fiduciary obligations, including creditors, in part because PDVH's directors overlapped with PDVSA's board of directors and took direction from Venezuela, and PDVH's corporate existence is a façade for PDVSA's dominance and control.

c) At all relevant times, PDVSA abused the corporate form to perpetrate a wrong or injustice.

d) PDVH is a sham entity used by PDVSA for the purpose of defrauding creditors by advancing PDVSA's (and in turn, Venezuela's) interests while avoiding its obligations.

e) Piercing the veil from PDVSA to PDVH would not impair the legitimate expectations of any adversely affected shareholders who are not responsible for the conduct that gave rise to the claim.

f) Allowing the veil to be pierced from PDVSA to PDVH would not establish a precedent troubling to shareholders generally.

g) At all relevant times, PDVSA exercised extensive dominion and control over PDVH, which harmed Plaintiff as a creditor of PDVSA.

h) The public convenience would be well served by allowing the veil to be pierced from PDVSA to PDVH.

i) At all relevant times, the wrongful conduct engaged in by PDVSA was extensive and severe.

j) Plaintiff comes before the Court with clean hands and has engaged in no wrongful conduct sufficient to bar Plaintiff from obtaining equitable relief.

k) Innocent third-party creditors of PDVH will not be harmed if the Court pierces the veil between PDVSA and PDVH.

l) No other remedies are practically available to Plaintiff at law or in equity to recover the debt owed to it by PDVSA.

> **Answer:**      Promissory Note Defendants deny the allegations contained in Paragraph
> 221.

222.    An actual case or controversy exists, in that PDVH disputes that it is an alter ego of PDVSA and that it is liable for PDVSA's debt, whereas Plaintiff contends it is so liable.

> **Answer:**      Promissory Note Defendants deny the allegations contained in Paragraph
> 222.

223.    An inequitable and unjust result would follow if the corporate separateness of PDVH were respected as against Plaintiff and the debt owed to Plaintiff; no adequate alternative remedy exists; and a declaration of the liability of PDVH, as the alter ego of PDVSA, is necessary to allow Plaintiff to recover the money it is owed.

> **Answer:**      Promissory Note Defendants deny the allegations contained in Paragraph
> 223.

224.    Plaintiff seeks a declaration of its right to recover the debt it is owed from PDVSA from PDVH as an alter ego of PDVSA with respect to its debt to Plaintiff and any judgment entered against PDVSA.

> **Answer:**      Promissory Note Defendants deny the allegations contained in Paragraph
> 224.

225.    Such a judicial declaration is necessary and appropriate at this time and under the circumstances and to resolve the dispute between Plaintiff and PDVH.

> **Answer:**      Promissory Note Defendants deny the allegations contained in Paragraph
> 225.

226.    Accordingly, Plaintiff seeks a declaratory judgment pursuant to the Court's authority under 28 U.S.C. § 2201 finding PDVH, as an alter ego of PDVSA, liable to Plaintiff for

the unpaid amount of the Promissory Note Defendants' debt to Plaintiff, along with interest, attorneys' fees, and costs.

> **Answer:**    Promissory Note Defendants deny that Plaintiff is entitled to a declaratory judgment or other relief sought in Paragraph 226.

## COUNT IV
## Turnover Pursuant to CPLR 5225(b) and Fed. R. Civ. P. 69
## (against PDVH)

227.    Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

> **Answer:**    Promissory Note Defendants repeat and reallege their responses to the allegations set forth above as if fully set forth herein.

228.    PDVH is an alter ego of PDVSA.

> **Answer:**    Promissory Note Defendants deny the allegations contained in Paragraph 228.

229.    PDVH is in possession or custody of money or other personal property, to wit, shares of Citgo Holding and/or other assets.

> **Answer:**    Paragraph 229 does not contain allegations against Promissory Note Defendants and therefore does not require a specific answer. To the extent that Paragraph 229 requires a specific answer, Promissory Note Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 229.

230.    To satisfy the debt owed to Plaintiff, Plaintiff is entitled to delivery of PDVH's shares of Citgo Holding, and any other assets, to the extent of any money judgment Plaintiff obtains

against Promissory Note Defendants, plus interest thereon, so that a writ of execution may be issued against the shares and assets of PDVH.

>    **Answer:**        Promissory Note Defendants deny that Plaintiff is entitled to the relief sought in Paragraph 230.

231.    Plaintiff's interest in PDVH's shares of Citgo Holding, to the extent of the money judgment obtained against the Promissory Note Defendants, plus interest thereon, is superior to the interest of PDVH in such funds, subject only to any claims by third parties with superior, prior claims.

>    **Answer:**        Promissory Note Defendants deny the allegations contained in in Paragraph 231.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment in favor of Plaintiff and against Defendants, as follows:

i.    holding Promissory Note Defendants jointly and severally liable to Plaintiff for breach of contract and awarding damages;

ii.    declaring that PDVH is an alter ego of PDVSA;

iii.    awarding Plaintiff damages against Defendants jointly and severally, in the amount of $175,000,108 in principal, plus 8.5% default interest from December 29, 2017 to the present date of September 30, 2024 in the amount of $100,538,761, plus 9% statutory interest from June 29, 2019 to the present date of September 30, 2024 in the amount of $82,849,366, plus fees and other costs, for a total of $358,388,235, plus a sum of $84,595 per day for each day between September 30, 2024 and the date of entry of judgment in additional interest;

iv.     awarding Plaintiff's requested relief against PDVH by issuing a Turnover Order to ensure PDVH's assets will be accessible to Plaintiff in, and delivered to, the state of New York;

v.     awarding Plaintiff reasonable attorneys' fees and costs incurred by Plaintiff in enforcing its rights and remedies under the Note Agreement and the Note and in this action;

vi.     expediting relief in light of other creditors seeking to enforce their rights; and

vii.     granting such other and further relief as this Court shall deem just and proper.

**Answer:**     Defendants deny the allegations contained in the Prayer for Relief.

## **Defendants' Affirmative Defenses**

Defendants assert the following affirmative defenses with respect to the causes of action alleged in the Consolidated Amended Complaint, without assuming the burden of proof where Plaintiff carries such burden(s).

1.     Plaintiff lacks standing to bring this this lawsuit because the Note Agreement was not properly assigned;

2.     Plaintiff's claims are barred or the court lacks subject matter jurisdiction under New York's champerty statute, Judiciary Law § 489, including because (a) Plaintiff lacks standing to bring this action, because, to the extent Plaintiff is in fact the beneficial owner of the Note, Plaintiff acquired the Note for the sole purpose of bringing this action; (b) Plaintiff's assignment by which it claims the right to bring this action is invalid and legally unenforceable; and (c) Plaintiff's claims are against public policy;

3.     Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands;

4.     Plaintiff's claims are barred, in whole or in part, by prior material breach;

5.     Plaintiff's claims are barred, in whole or in part, by waiver or estoppel;

6.     Plaintiff's claims are barred, in whole or in part, by failure of conditions precedent;

7.     Plaintiff's claims are barred, in whole or in part, by impossibility;

8.     Plaintiff's claims are barred, in whole or in part, by illegality, including but not limited to the Act of State doctrine;

9.     Plaintiff's claims are barred, in whole or in part, by the doctrine of laches; and

10.    Plaintiff's requested relief is barred by the United States Government's Venezuela-related sanctions regime and Plaintiff lacks permission from the United States to obtain its requested relief.

Defendants reserve the right to amend and/or supplement their affirmative defenses up to and including the date of trial.

Dated: New York, New York
      October 23, 2024

Respectfully submitted,

*/s/ Camilo Cardozo*

Camilo Cardozo
Dora Georgescu
VINSON & ELKINS LLP
The Grace Building
1114 Avenue of the Americas
32nd Floor
New York, New York 10036
Telephone: (212) 237-0000
ccardozo@velaw.com
dgeorgescu@velaw.com

Andreina Escobar
VINSON & ELKINS LLP
845 Texas Ave, Suite 4700
Houston, Texas 77002
Telephone: (713) 758-2556
aescobar@velaw.com

*Counsel for Defendants*
*Petróleos de Venezuela, S.A. and*
*PDVSA Petróleo S.A.*