```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
G&A STRATEGIC INVESTMENTS I LLC,    :
et al.,                             :
                                    :
        Plaintiffs,                 :
                                    :         23-cv-10766 (JSR)
            -v-                     :
                                    :
PETRÓLEOS DE VENEZUELA, S.A.        :
et al.,                             :
                                    :
        Defendants.                 :
------------------------------------x
GIRARD STREET INVESTMENT            :
HOLDINGS LLC,                       :
                                    :
        Plaintiff,                  :
                                    :         23-cv-10772 (JSR)
            -v-                     :
                                    :
PETRÓLEOS DE VENEZUELA, S.A.        :
et al.,                             :
                                    :
        Defendants.                 :
------------------------------------x
GIRARD STREET INVESTMENT            :
HOLDINGS LLC,                       :
                                    :
        Plaintiff,                  :
                                    :         24-cv-04448 (JSR)
            -v-                     :
                                    :
PDV Holding, Inc.                   :
                                    :
        Defendant.                  :
------------------------------------x
```

## OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

Plaintiffs in these consolidated actions — G&A Strategic
Investments I LLC, G&A Strategic Investments II LLC, G&A Strategic
Investments III LLC, G&A Strategic Investments IV LLC, G&A Strategic

Investments V LLC, G&A Strategic Investments VI LLC, and G&A Strategic Investments VII LLC (collectively, "G&A"), and Girard Street Investment Holdings LLC ("Girard Street") — purchased promissory notes issued by defendant Petróleos de Venezuela, S.A ("PDVSA") and guaranteed by defendant PDVSA Petróleo S.A. ("Petróleo"). Plaintiffs sued PDVSA and Petróleo, alleging that they defaulted on their obligations under the notes, see Count I & II of the Amended Complaint in the consolidated actions.[1] Plaintiffs also sued PDVH Holding, Inc. ("PDVH"), a wholly owned Delaware subsidiary of PDVSA, alleging that PDVH is PDVSA's alter ego, on the basis of which they seek turnover of PDVH's valuable assets in the United States, see Counts III & IV. PDVH has now moved to dismiss Counts III and IV. For the reasons that follow, the Court denies PDVH's motion to dismiss.

## I.    Background

Plaintiffs, investment funds, filed initially separate but now consolidated and essentially identical actions against PDVSA, an oil company owned by the Bolivarian Republic of Venezuela ("Venezuela"), and Petróleo, a Venezuelan corporation wholly owned by PDVSA. These actions stem from PDVSA's alleged default on notes issued in 2016 and 2017, guaranteed by Petróleo, which were subsequently acquired by plaintiffs through a series of intermediaries in 2018 and 2021. After having obtained now vacated default judgments against PDVSA and

---

[1] See G&A Amended Complaint ("G&A Compl.") (Dkt. 89), G&A Strategic Investments I LLC et al v. Petroleos de Venezuela, S.A. et al, 23-cv-10766 (S.D.N.Y.). Unless otherwise specified, parallel citations to the other dockets are omitted for readability.

Petróleo, Girard Street filed a separate action against PVDH for alter ego liability and a turnover order under N.Y. CPLR § 5225(b) and Fed. R. Civ. P. 69 on June 10, 2024. That alter ego action was consolidated with the actions against PDVH's parent company, PDVSA, and Petróleo. See Girard Street Investment Holdings LLC v. PDV Holding, Inc., 24-cv-00444 (S.D.N.Y. June 10, 2024). On the same date, G&A initiated an action against PDVH in Texas state court, which was subsequently removed to federal court, asserting claims arising from PDVH's alleged alter ego liability for the defaulted notes acquired by G&A. See G&A Strategic Invs. I LLC, et al. v. PDV Holding, Inc., No. 24-cv-2774 (S.D. Tex.) ("Texas Action"). The Texas Action is substantially similar to the alter ego claims brought by Girard Street against PDVH in this Court. (Texas Action, Dkt. 1). The Southern District of Texas court stayed the case pending the resolution of G&A's underlying action before this Court and, on December 4, 2024, G&A moved to lift that stay and transfer the case to this Court. (Texas Action, Dkts. 57 and 58).[2] On November 21, 2024, G&A also amended its complaint in this Court, asserting alter ego and turnover claims against PDVH (23-cv-10766, Dkt. 89).

## II.  Motion to Dismiss

PDVH now moves to dismiss plaintiffs' veil-piercing and turnover claims in the consolidated and amended complaints. For the purposes

_____

[2] To date, the Southern District of Texas court has not ruled on this motion.

of this motion, PDVH assumes _arguendo_ PDVSA's and Petróleo's liability. Initially, PDVH claims that plaintiffs' "judgment enforcement claims . . . are governed by Fed. R. Civ. P. Rule 69(a)," which, it argues, obliges the Court to apply Delaware law to plaintiffs' veil-piercing claim. PDVH Holding, Inc.'s Memorandum of Law in Support of Motion to Dismiss, Girard Street Action, at 6-7 ("MTD") (Dkt. 51).[3] PDVH next contends that plaintiffs have insufficiently alleged alter ego under Delaware law. _Id._ at 7-18. Finally, in the alternative, PDVH argues that plaintiffs' claims fail under the Supreme Court's precedent in First National City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611 (1983) ("_Bancec_"), which set forth the federal common law standard for veil-piercing claims involving a foreign state. _Id._ at 22-24.

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). However, plaintiffs are only required to allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible[.]" Twombly, 550 U.S. at 570. In evaluating the complaint, a court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and

---

[3] Unless otherwise indicated, the cite references are to PDVH's motion to dismiss Girard Street's claims.

construe the complaint liberally." <u>Rescuecom Corp. v. Google Inc.</u>, 562 F.3d 123, 127 (2d Cir. 2009) (internal quotation marks omitted).

### III. Choice of Law

The Court first turns to PDVH's choice-of-law argument. Specifically, PDVH argues that Fed. R. Civ. P. Rule 69(a) governs the alter ego and turnover claims. MTD 6-7, 22-24. The rule provides that:

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Under New York choice of law rules, <u>i.e.</u>, the rules of the state where this Court is located, veil piercing is governed by the state of incorporation of the entity whose veil is to be pierced; in this instance, Delaware, because PDVH is a Delaware corporation. <u>See Aaron Richard Golub, Esquire, P.C. v. Blum</u>, No. 23-cv-10102 (JSR), 2024 WL 1376436, at *2 (S.D.N.Y. Apr. 1, 2024); MTD at 6-7. However, by framing plaintiffs' claims as "judgment enforcement," PDVH puts the cart before the horse. This is because in the first instance, PDVH seeks to dismiss plaintiffs' substantive alter ego claim on which the "judgment enforcement" claims for the turnover of PDVH's assets depend. Plaintiffs action is not a mere post-judgment collection. On the contrary, the resolution of the alter ego claims requires this Court to determine the attribution of liability between a foreign instrumentality (PDVSA), which is treated as a "foreign state" for the

purposes of the Foreign Sovereign Immunities Act ("FSIA" or the "Act"), and an alleged alter ego of that foreign state. See 28 U.S.C. § 1603(a).[4] The Court concludes that the Bancec test that addresses the circumstances under which American courts can disregard the separate legal status of entities controlled by foreign governments is the proper standard in these circumstances for several reasons.

First, the Bancec Court addressed a parallel situation implicating concerns that a foreign state could avoid its liabilities through transferring assets between corporate entities. While foreign instrumentalities are treated as "foreign states" for jurisdictional purposes under the FSIA, the Bancec Court, applying corporate law principles, held that foreign states and their subsidiaries should generally be regarded as separate "juridical entities." Id. at 626-27; see also 28 U.S.C. § 1603(a). This holding was driven by respect for foreign sovereigns and concerns about the uncertainty and potential harm to sovereigns and their creditors that could arise from disregard of the separate corporate structures of government instrumentalities.

---

[4] In pertinent parts, plaintiffs' complaint also alleges that PDVSA and PDVH are controlled by the state of Venezuela. See, e.g., G&A Compl. ¶ 7 ("PDVH is merely a façade for PDVSA and Venezuela's dominance[.]"), id. ¶ 90 ("[T]he profits of PDVH, a Delaware corporation have been transferred to PDVSA and then to Venezuela to fund sovereign functions of Venezuela rather than for commercial purposes or to pay legitimate third-party creditors[.]"). However, the alter ego relationship between Venezuela and PDVSA has not yet been addressed by this Circuit, nor is it contested in the motions to dismiss. Cf. Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela, 932 F.3d 126 (3d Cir. 2019), cert. denied, 140 S. Ct. 2762 (2020); OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela ("OIEG"), 73 F.4th 157 (3d Cir. 2023), cert. denied, 144 S. Ct. 549 (2024).

Id. However, Bancec also held that the presumption of separateness can be overcome, and an instrumentality can be held "answerable just as its sovereign parent would be if the foreign state has abused the corporate form, or where recognizing the instrumentality's separate status works a fraud or an injustice." Letelier v. Republic of Chile, 748 F.2d 790, 794 (2d Cir. 1984). Turning to the instant case, it is true that Bancec decided the allocation of liability between a foreign state and its instrumentality, and PDVH is ostensibly a Delaware corporation, and not an instrumentality of Venezuela under the FSIA. See 28 U.S.C. § 1603(b) (excluding from the definition of an "instrumentality" any entity that is "a citizen of a State of the United States"); see also Dole Food Co. v. Patrickson, 538 U.S. 468 (2003). Nevertheless, the Court concludes that Bancec is still controlling because its holding was not limited to entities defined as instrumentalities under the Act. The Bancec test is "grounded in equitable principles and federal common law" and its "origins and purpose do not depend on the alleged alter ego's being an instrumentality of a foreign state" under the FSIA, which is a distinct jurisdictional inquiry. Funnekotter v. Agric. Dev. Bank of Zimbabwe, No. 13 CIV. 1917 CM, 2015 WL 3526661, at *13 (S.D.N.Y. June 3, 2015).[5]

---

[5] PDVH's attempt to distinguish Funnekotter because it involved "a Zimbabwean subsidiary, not a U.S. corporation" is unpersuasive. PDVH's Reply in Support of Motion to Dismiss, at 3 (Dkt. 61). There is no basis in Bancec, other case law, or the FSIA for the proposition that U.S. companies cannot be considered alter egos of foreign states. See Kirschenbaum v. 650 Fifth Ave. & Related Properties, 830 F.3d 107, 129–30 (2d Cir. 2016), abrogated on other grounds by Rubin v. Islamic Republic of Iran, 583 U.S. 202 (2018) (applying Bancec to the

The main purpose animating the Bancec doctrine is to prevent the injustice of a foreign state "escap[ing] liability for [its] acts . . . simply by retransferring [] assets to separate juridical entities." Bancec, 462 U.S. at 633. That is precisely the concern presented by the instant action in which plaintiffs allege that "[a]dhering to separate identities for PDVSA and PDVH would permit PDVSA, as the agency and instrumentality of a foreign state, to benefit from the limited liability extended to U.S.-based entities . . . while avoiding its obligations to commercial creditors[.]" G&A Compl. ¶ 6; see also U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co., No. 97 Civ. 6124 (JGK), 1999 WL 307666 at *8 n.5 (S.D.N.Y. May 17, 1999), aff'd, U.S. Fid. & Guar. Co. v. Braspetro Oil Servs., 199 F.3d 94 (2d Cir. 1999) (holding that "[t]he principal-agent analysis under corporate law is equally applicable to the relationship between agencies or instrumentalities of a foreign state. . . and their alleged alter ego").

Furthermore, limiting Bancec to foreign states and entities defined as instrumentalities under the FSIA would yield incongruous and untenable results. First, such an approach would allow disparate state law standards to govern the attribution of liability between a foreign state and its alleged alter ego, leading to inconsistent outcomes depending on the state of incorporation of the alter ego entity. Second, PDVH's proposition would create a situation where an

_____

determination of whether a New York corporation is an alter ego of Iran).

instrumentality could be held liable for debts of a foreign state, but a second-level subsidiary would remain insulated from similar liability. This result stands in stark contrast to the reality that a foreign state can exert substantial control over an indirect subsidiary with much the same ease as it controls a direct instrumentality. For these very reasons, the Supreme Court in Bancec rejected the application of state law to questions implicating the amenability of foreign states to suits, 462 U.S. at 622 n. 11 (observing that the FSIA is "silent . . . concerning the rule governing the attribution of liability among entities of a foreign state" and concluding that the application of state law was precluded). The Court recognized that upon enacting the FSIA, "Congress expressly acknowledged 'the importance of developing a uniform body of law' concerning the amenability of a foreign sovereign to suit in United States courts." Id. (citing H.R.Rep. No. 94-1487, p. 32); see also Barkanic v. General Admin. of Civil Aviation, 923 F.2d 957, 959-60 n. 2 (2d Cir. 1991). The same considerations preclude the application of Delaware law in this case.

Finally, the Court agrees with another court in this district in concluding that restricting the application of the federal common law alter ego standard to instrumentalities of foreign states would contravene "[t]he language and history of the FSIA [that] clearly establish that the Act was not intended to affect the substantive law determining the liability of a foreign state or instrumentality, or the attribution of liability among instrumentalities of a foreign

state." Funnekotter, 2015 WL 3526661, at *13 (citing Bancec, 462 U.S. at 620); see also H.R. Rep. No. 94-1487, at 12 (1976). Bancec set forth the substantive law governing the attribution of liability among entities of a foreign state, and this Court must apply it. See also U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co., No. 97 CIV. 6124 (JGK), 1999 WL 307666, at *6-7 (S.D.N.Y. May 17, 1999), aff'd, 199 F.3d 94 (2d Cir. 1999) (applying Bancec to the determination of whether Brasoil, a non-sovereign subsidiary of an instrumentality of Brazil, was an alter ego of that instrumentality); see also Kirschenbaum v. 650 Fifth Ave. & Related Properties, 830 F.3d 107, 127-130 (2d Cir. 2016), abrogated on other grounds by Rubin v. Islamic Republic of Iran, 583 U.S. 202 (2018).

Independently, the Court finds that Rule 69 does not require the application of Delaware law. Rule 69(a) governs "the procedure on execution" of a federal judgment, but it does not require that the Court apply the substantive law of the forum state. See Peacock v. Thomas, 516 U.S. 349, 359 (1996) ("[T]he Federal Rules of Civil Procedure provide fast and effective mechanisms for execution" in order "[t]o protect and aid the collection of a federal judgment.") "Instead, the proper approach is to apply federal common law, as reflected most particularly in Bancec, to the alter ego analysis, when such an analysis is required to resolve a motion brought pursuant to Rule 69 against a state instrumentality." Tidewater Inv. SRL v. Bolivarian Republic of Venezuela, No. MC 19-79-LPS, 2023 WL 7182179, at *8 (D. Del. Nov. 1, 2023).

PDVH's reliance on <u>Karaha Bodas Co. v. Perusahaan Pertambangan</u>, 313 F.3d 70 (2d Cir. 2002) to argue that Rule 69 (and by extension, Delaware law) governs the veil-piercing claims in this case is misplaced. MTD at 7, 22-23. <u>Karaha Bodas</u> did not involve a question of alter ego liability. The defendant's substantive liability in that case was determined in a prior arbitration, and the Court merely applied New York law to determine "what assets [of a foreign instrumentality] are subject to enforcement, and thus available to judgment creditors." <u>Id.</u> at 76-78, 83 (citation and internal quotation marks omitted). In <u>EM Ltd. v. Republic of Argentina</u>, the Second Circuit emphasized that "[i]t is important to distinguish arguments" which address a foreign state's "ownership or control over the assets" of an instrumentality, citing <u>Karaha Bodas</u>, and, on the other hand, arguments that turn on the foreign state's control over that instrumentality itself (such as the instant case). 473 F.3d 463, 475 (2d Cir. 2007) ("<u>EM Ltd. I</u>"). PDVH does not dispute the ownership of the assets that plaintiffs seek in satisfaction of a potential judgment. Instead, PDVH's arguments address the level of control, or lack of it, that PDVSA allegedly exerted over PDVH — a quintessential alter ego argument. PDVH's reliance on <u>Cassirer v. Thyssen-Bornemisza Collection Foundation</u>, 596 U.S. 107 (2022) is equally unpersuasive. PDVH's Reply in Support of Motion to Dismiss at 2-3 (Dkt. 61). "<u>Cassirer</u> addresses the application of choice-of-law rules for primary liability of non-federal claims against" an instrumentality of Kingdom of Spain. <u>Tidewater</u>, 2023 WL 7182179, at *9 n.10. PDVSA's primary

liability under the notes, governed here by New York law, is undisputed. The core issue in this case, however, is distinct: it concerns PDVH's secondary alter ego liability for the alleged debt of a foreign instrumentality. Similarly, the Court concludes the other cases cited by the defendant fail to address the relevant issue; they either do not pertain to the question of alter ego liability or do not involve a foreign sovereign altogether. See MTD at 7, 22-24.

## IV.  Alter Ego Claims

Having determined the applicable law, the Court must apply the Bancec standard to plaintiffs' alter ego claims. "[B]oth Bancec and the FSIA legislative history caution against too easily overcoming the presumption of separateness" of corporate form. De Letelier, 748 F.2d at 795. Under Bancec, that presumption of separateness between corporate entities may be overcome in just two circumstances: (1) where "a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created," or (2) where recognizing the instrumentality's separate juridical status "would work fraud or injustice." Bancec, 462 U.S. at 629.

A. Extensive Control Prong

The Second Circuit has held that the "touchstone" inquiry under the extensive control prong of Bancec is "whether the sovereign state exercises significant and repeated control over the instrumentality's day-to-day operations." EM Ltd. v. Banco Central de la República Argentina, 800 F.3d 78, 91 (2d Cir. 2015) ("EM Ltd. II"); see also

Gater Assets Ltd. v. AO Moldovagaz, 2 F.4th 42, 55-56 (2d Cir. 2021) ("Moldovagaz") ("To qualify as sufficiently extensive under Bancec, the sovereign's control over an entity must rise above the level that corporations would normally tolerate from significant shareholders or expect from government regulators."). According to the Second Circuit, there are five factors that are relevant to the extensive control inquiry, "whether the sovereign nation: (1) uses the instrumentality's property as its own; (2) ignores the instrumentality's separate status or ordinary corporate formalities; (3) deprives the instrumentality of the independence from close political control that is generally enjoyed by government agencies; (4) requires the instrumentality to obtain approvals for ordinary business decisions from a political actor; and (5) issues policies or directives that cause the instrumentality to act directly on behalf of the sovereign state." EM, Ltd. II, 800 F.3d at 91. "No one factor is dispositive, and the underlying facts should be weighed collectively." Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp., 397 F. Supp. 3d 323, 335 (S.D.N.Y. 2019), aff'd in relevant part, 40 F.4th 56, 69-70 (2d Cir. 2022).

### i.  *PDVSA's alleged use of PDVH's property as its own*

Plaintiffs' chief allegation is that PDVSA treats PDVH's property "as its own, siphoning funds from PDVH and its subsidiaries and ignore[es] PDVH's separate status" by causing "PDVH to transfer billions of dollars of Citgo dividends to PDVSA, which PDVSA promptly

transferred to its alter ego, Venezuela, leaving PDVSA and PDVH undercapitalized, unable to pay debts as they came due, and unable to make dividend payments." Girard Street's Opposition to PDVH's Motion to Dismiss, at 9 (Dkt. 59); G&A Compl. ¶ 5. This allegation primarily concerns two types of events: (1) the payment of corporate dividends by PDVH and its subsidiaries, allegedly financed by large debt and funneled through PDVSA to Venezuela, and (2) PDVH's alleged pledge of equity in Citgo for the benefit of PDVH. See also G&A Compl. ¶ 105 (alleging that Venezuela's low credit rating "made it nearly impossible for the Venezuelan government or PDVSA to engage in unsecured financing").[6]

With respect to the dividend payments, plaintiffs allege that between 2013 and 2015, as world oil prices collapsed and Venezuela was thrown into economic turmoil, Citgo repeatedly declared dividends that it then distributed to PDVSA and ultimately to the government of Venezuela. G&A Compl. ¶ 128-44. Specifically, in July 2014, Citgo allegedly "prepared to issue a $650 million note in part to finance $300 million in dividends for PDVSA" and the press reported that Citgo would become "indebted to provide resources to its parent company [PDVSA]," which was becoming increasingly mired in debt. Id. ¶ 132 (alteration in text). According to plaintiffs' allegations, the 2015 dividends were financed by an even more complex debt transaction valued

---

[6] Citgo Petroleum Corporation ("Citgo") is a prominent U.S. oil refiner that is wholly owned by Citgo Holding, Inc. ("Citgo Holding"). Citgo Holding, in turn, is wholly owned by PDVSA. G&A Compl. ¶ 3.

at $2.8 billion. First, "on or about February 9, 2015, Citgo Holding issued $1.5 billion in high-yield bonds secured by 100% of Citgo's stock, five terminals, and substantially all other assets of Citgo Holding and the guarantors. . . ." Id. ¶ 134. Shortly thereafter, Citgo Holding allegedly "entered into a $1.3 billion loan facility, secured by 100% of Citgo's stock and 100% of the limited liability company interests in Citgo Holding's direct subsidiaries, as well as minority pipeline interests and terminals owned by those subsidiaries, and further guaranteed by Citgo Holding's 'direct subsidiaries other than CITGO.'" Id. Further still, plaintiffs allege that in 2019, "Carlos Jordá, the President of Citgo, and Luisa Palacios, President of Citgo's Board of Directors and member of PDVH's Board of Directors, stated in an interview that Citgo's dividends were used to pay Venezuela's debts." Id. ¶ 142. In 2022, Venezuelan President Maduro stated that "PDVSA owns CITGO and its dividends belong to our country." Id. ¶ 144.

Defendant PDVH contends that these dividend payments are unremarkable because corporate shareholders are legally entitled to receive dividends. MTD at 15. That argument misses the crux of the issue. To be sure, ordinary dividend payments alone are insufficient to justify piercing the corporate veil. See Partner Reinsurance Co. Ltd. v. RPM Mortg., Inc., No. 18 CIV. 5831 (PAE), 2020 WL 6690659, at *10 (S.D.N.Y. Nov. 13, 2020) (collecting cases). Upon closer look, however, there is nothing ordinary about PDVH's subsidiaries incurring nearly three billion dollars in debt within a short timeframe to issue

the dividends that were allegedly declared solely for the benefit of Venezuela. Furthermore, it was also irregular for Citgo Holding to declare a dividend in 2015 amounting to three times its net earnings, especially when other comparable companies issued dividends that typically averaged at one-third of their net earnings. See id. ¶ 133-35.

PDVH further contends that its subsidiaries were merely assisting a distressed parent company in meeting its financial obligations. That argument fails to address the core issue of the present litigation, which, like numerous other lawsuits across the country, arises from Venezuela's and PDVSA's prolonged and unresolved default on their debts and suggests that the large dividend payments were not, in fact, used to pay off PDVSA's creditors. And according to plaintiffs, the alleged dividend scheme is consistent with Venezuela's "declared intent" to avoid paying off its debts. See, e.g., id. ¶ 138 (January 2012 speech by Chávez ("'[W]e will not recognize any decision' by an arbitral panel. 'They are trying the impossible: to get us to pay subsidiaries other than CITGO. We are not going to pay them anything.'")).

Plaintiffs further allege that PDVSA freely used PDVH's equity for its own financial advantage and without any benefit to PDVH. Specifically, in 2016, PDVSA exchanged certain notes for bonds secured by a pledge of 50.1% of PDVH's equity in Citgo Holding. PDVSA then allegedly pledged the remaining 49.9% as collateral in exchange for a $1.5 billion loan from Rosneft. Id. ¶ 145-53.

> ii.  Alleged failure to observe PDVH's separate status or
> ordinary corporate formalities & deprivation of the
> corporation of independence from political control

Plaintiffs next allege that PDVSA failed to observe corporate formalities as to PDVH because it legally mandated that the President of PDVSA review and approve every contract of PDVH as well as Citgo Holding and Citgo. G&A Compl. ¶ 160 (citing Venezuelan Official Gazette 41.294, Resolution No. 164 (Dec. 6, 2017)). That review operated in conjunction with a decree issued by President Maduro in 2018 that empowered the Venezuelan "Minister of Petroleum to take a variety of actions to control PDVSA and its subsidiaries—including PDVH, Citgo Holding, and Citgo—such as creating, eliminating, or making changes to PDVSA and its affiliates; creating, eliminating, modifying, or centralizing the management and administration of PDVSA and its affiliates; and ordering the amendment of the by-laws of state-owned oil companies." Id. ¶ 161 (citing Venezuelan Official Gazette 440.859, Decree No. 44 (Apr. 12, 2018)). Plaintiffs further allege that historically, there has been an overlap between the Boards of Directors of PDVSA (appointed by the President of Venezuela) and PDVH. G&A Compl. ¶ 162-66. Venezuela also did not hesitate to ignore the corporate subsidiary structure and appointed, on several occasions, the president of Citgo directly. Id.

As PDVH correctly points out, these factors, alone, do not adequately demonstrate extensive control by the parent company. See, e.g., EM Ltd. II, 800 F.3d at 92 ("[C]ourts have consistently rejected the argument that the appointment or removal of an instrumentality's

officers or directors, standing alone, overcomes the Bancec
presumption.") (collecting cases). Determination of the "extensive
control" factor is, however, a multi-pronged inquiry. See Crystallex
Int'l Corp. v. Bolivarian Republic of Venezuela, 333 F. Supp. 3d 380,
402 (D. Del. 2018), aff'd and remanded, 932 F.3d 126 (3d Cir. 2019)
(finding alter ego status where, inter alia, "Venezuela appoints
PDVSA's Board of Directors, and several Government Ministers are also
members of PDVSA's Board of Directors"). The Court therefore considers
the alleged lack of corporate formalities together with the allegations
of syphoning of funds and PDVH's other actions on behalf of PDVSA.

### iii. PDVSA's alleged issuance of policies causing PDVH to act directly on behalf of PDVSA

The next factor weighing on PDVH's independence is PDVH's alleged
registration with the United States Department of Justice as a foreign
agent for PDVSA. G&A Compl. ¶ 112. In filings under the Foreign Agents
Registration Act of 1938 ("FARA"), PDVH disclosed that it "interacted
with U.S. Government officials to advocate for a resolution to various
creditor claims against the Government of Venezuela and/or its
subsidiaries[,]" an effort that included PDVH representatives to meet
"Venezuelan government officials within the Government of Juan Gerardo
Guaidó." Id. PDVH argues that in these meetings, PDVH advanced its own
interests. MTD at 17. But that interest is not mutually exclusive with
advancing PDVH's alleged declared advocacy on behalf of PDVSA.

Taken together, plaintiffs' have alleged that PDVSA and Venezuela
compelled PDVH to issue substantial dividends financed by significant

debt; PDVSA's use of PDVH's equity in Citgo for its own benefit; the overlapping board members among the Venezuelan government, PDVSA, and PDVH as well as PDVSA's alleged involvement in PDVH's internal affairs; and that PDVH undertook actions on behalf of PDVSA in the United States.    These allegations "nudge" plaintiffs' claim that PDVSA controlled day-to-day operations of PDVH to such an extent that PDVH is the alter ego of PDVSA "across the line from conceivable to plausible[.]" Twombly, 550 U.S. at 570.

## B. Fraud or Injustice Prong

Although plaintiffs plead sufficient facts to satisfy the first prong set forth in Bancec for disregarding the corporate form, the Court now turns to the second prong under which a court evaluates whether PDVSA or PDVH "abused the corporate form to avoid their obligations." EM Ltd. II, 800 F.3d at 95 (citation, internal quotation marks, and alterations omitted).    To prevail under this prong, it is insufficient for plaintiff "merely to point out an injustice that would result from an adverse decision." Moldovagaz, 2 F. 4th at 62 (citation omitted). Accordingly, courts have found that a sovereign abused the corporate form where that sovereign asserted claims through a dissolved entity to shield itself from liability, dissolved a state-owned corporation with unpaid liabilities and replaced it with a newly created and undercapitalized entity, or intentionally structured its corporate relationships to "confound[] its creditors." See EM Ltd. II, 800 F.3d at 95-96 (collecting cases) (citation omitted). In contrast,

in Moldovagaz, the Second Circuit held that Moldova's preferential payments of certain of Moldovagaz's debts and Moldovagaz's "chronic undercapitalization" did not evidence such abuse of corporate form. Moldovagaz, 2 F.4th at 62-63.

Applying this precedent, the Court concludes that plaintiffs have not sufficiently alleged alter ego liability under the fraud or injustice prong of Bancec. See also Crystallex I, 333 F. Supp. 3d at 403-4. Plaintiffs' statements that Venezuela "operate[s] PDVH as a sham entity and facilitate fraud or injustice," are largely conclusory and do not allege with factual specificity how PDVH's separate legal status has been used to defraud creditors. G&A Compl. ¶ 190. And the fact that PDVSA has been allegedly siphoning funds from PDVH or that PDVH did not maintain a separate corporate structure speak more to PDVSA's control over PDVH than to particularized fraud.

## V.    G&A Alter Ego Claims and the First-Filed Rule

PDVH also moves to dismiss on two grounds the veil-piercing and asset-turnover claims of G&A. PDVH Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint, at 1-2 (3-cv-10766, Dkt. 96) ("G&A MTD"). First, and for the same reasons as discussed in connection with Girard Street's claims, the court denies PDVH's motion to dismiss G&A's alter ego claims.

Second, and relating solely to G&A's alter ego claims, is the contention that the claims should be dismissed under the so-called "first-filed" rule in favor of the Texas Action, which was filed in

June of 2024, while G&A's alter ego claims before this Court were filed in November of 2024. G&A MTD at 11-13. G&A counters that the first-filed rule does not apply here because Girard Street's alter ego action in this Court, which is identical to the action brought by G&A, was filed on the same day as the Texas Action. G&A's Opposition to PDVH's Motion to Dismiss, 11-15 (Dkt. 98) ("G&A Opp.").

Ordinarily, the first-filed rule counsels that "where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." First City Nat'l Bank & Trust v. Simmons, 878 F.2d 76, 79 (2d Cir.1989) (internal quotations, citation, and alterations omitted). "This presumption, however, is not to be applied in a rigid or mechanical way, and is quite commonly overcome where circumstances warrant." Dornoch Ltd. ex rel. Underwriting Members of Lloyd's Syndicate 1209 v. PBM Holdings, Inc., 666 F. Supp. 2d 366, 369 (S.D.N.Y. 2009) (citation and internal quotation marks omitted). Here, PDVH applied the rule mechanically and failed to consider that Girard Street's and G&A's veil-piercing claims are identical because they both allege PDVSA's extensive day-to-day control of PDVH. These claims have been consolidated with the underlying actions brought by plaintiffs against PDVSA, on which the alter ego claims depend. The Court thus concludes that the present situation is inapposite for the application of the first-filed rule.

Moreover, and in any case, the Court finds that the "balance of convenience" factors weighs heavily against dismissing G&A's alter ego

claims. See Emps. Ins. of Wausau v. Fox Ent. Grp., Inc., 522 F.3d 271, 275 (2d Cir. 2008) (concluding that the "balance of convenience" factors evaluated by a court in connection with the first-filed rule are the same as those considered on a motion to transfer venue pursuant to 28 U.S.C. § 1404(a). The joint adjudication of the alter ego claims conserves judicial resources due to overlapping document productions and witness depositions. If these claims were to be dismissed, potential witnesses would have to be available for depositions and trials in both actions, thus creating duplication of efforts. And, importantly, the action before this Court is significantly more advanced than the Texas Action, which has been stayed pending the resolution of G&A's underlying case before this Court. (Texas Action, Dkt. 57). With discovery set to close on February 24, 2025 (i.e., next Monday), judicial efficiency is better served by keeping the case in the Southern District, rather than dismissing it in favor of the Texas Action, where discovery has yet to begin. See, e.g., Tarazi v. Truehope Inc., 958 F.Supp.2d 428, 436 (S.D.N.Y.2013) (the importance of which case was filed "first" is diminished "where the first-filed action has not reached a more advanced stage than the later action") (citation and internal quotation marks omitted).[7]

---

[7] The Court concludes that the other factors that a court considers when evaluating the "balance of convenience" factors, including the plaintiff's choice of forum, the location of documents, the convenience of the parties, the locus of operative facts, the availability of process to compel the attendance of unwilling witnesses, and the relative means of the parties, are neutral as to both the New York and Texas Actions. Emps. Ins. of Wausau, 522 F.3d at 275.

## VI.  Equitable Considerations

Finally, the Court notes that it is in receipt of an Amicus Curiae brief filed by ConocoPhillips Petrozuata B.V., ConocoPhillips Gulf of Paria B.V., Phillips Petroleum Company Venezuela Limited, and ConocoPhillips Hamaca B.V. ("ConocoPhillips"), a non-party to these consolidated actions, and one of the creditors in Crystallex International Corp. v. Bolivarian Republic of Venezuela, No. 1:17-mc-151 (D. Del.) (the "Crystallex Action") (24-cv-04448, Dkt. 78) ("ConocoPhillips Amicus"). By way of background, in Crystallex, a District of Delaware court is presiding over the judicial sale of PDVSA's shares in PDVH, after the Third Circuit determined that PDVSA is an alter ego of Venezuela under Bancec and that its property can be rendered to satisfy Venezuela's significant liabilities. See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela, 932 F.3d 126, 152 (3d Cir. 2019); OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela, 73 F.4th 157, 176 (3d Cir. 2023), cert. denied, 144 S. Ct. 549 (2024). The Crystallex court appointed a special master to conduct an auction of PDVH shares to satisfy Venezuela's creditors and set rules for these creditors to qualify for proceeds from the sale of PDVH's valuable shares. (Crystallex Action, Dkts. 258 & 646). To organize nearly two dozen participating creditors with twenty-two billion dollars in claims, the Court imposed a Delaware common-law "first in time, first in line priority" rule, meaning that creditors were to receive proceeds in order in which they perfected their writs. (Crystallex Action Dkt. No. 963). However, plaintiffs in the

consolidated actions did not timely complete the necessary process to obtain writs of attachment on PDVH shares. ConocoPhillips Amicus at 2-3; Crystallex Action (Dkt. 893). Unable to proceed in the Crystallex case, plaintiffs brought the instant action against PDVH *in personam*, seeking to attach assets further down the corporate chain.

By filing the amicus, ConocoPhillips joins a chorus of entities, which now include the defendants in these actions, the Special Master in Crystallex, and two proposed intervenors, who argue that plaintiffs unfairly sidestepped the Crystallex process. ConocoPhillips, in particular, argues that corporate veil-piercing, a legal doctrine rooted in equity, is especially unsuitable in this context, where plaintiffs have improperly cut ahead of an orderly line of creditors in Delaware by initiating the instant action with nothing to show for it but their own neglect and tardiness. ConocoPhillips Amicus, at 4-6. While the Court remains cognizant of its equitable powers, it deems it premature to assess the propriety of veil piercing, especially given that plaintiffs have yet to establish PDVSA's primary liability on the notes, let alone make the difficult showing necessary to prove PDVH's alter ego liability for PDVSA's debts.

Accordingly, for the foregoing reasons, the Court hereby denies PDVH's motions to dismiss plaintiffs' alter ego and turnover claims. The Clerk is directed to close the following motions: Dkt. 50 (Girard Street Investment Holdings LLC v. PDV Holding, Inc., Docket No. 24-cv-04448); Dkt. 95 (G&A Strategic Investments I LLC et al v. Petroleos de Venezuela, S.A. et al, Docket No. 23-cv-10766).

SO ORDERED.

Dated: New York, NY
February 21, 2024

_____
JED S. RAKOFF, U.S.D.J.