Michael J. Baratz
202 429 6468
mbaratz@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com

**Steptoe**

March 10, 2025

**FILED VIA ECF & EMAIL TO CHAMBERS**

The Honorable Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

>   Re:   *G&A Strategic Investments I LLC et al. v. Petróleos De Venezuela, S.A. et al.*, No. 1:23-cv-10766-JSR; *Girard Street Investment Holdings LLC v. PDV Holding, Inc.* No. 24-cv-4448-JSR; *Girard Street Investment Holdings LLC v. Petróleos de Venezuela, S.A. et al.*, No. 23-cv-10772

Dear Judge Rakoff:

Plaintiffs respectfully submit this letter outlining evidence obtained during discovery that supports a finding that recognizing juridical separateness between Petróleos de Venezuela, S.A. ("**PDVSA**") and PDV Holding, Inc. ("**PDVH**") would work an injustice under *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*") and providing a proposal as to how to handle this issue procedurally. Plaintiffs believe this issue can properly be briefed on summary judgment without the need to amend the pleading now.

Although the Court held at the motion to dismiss stage that Plaintiffs' complaints did not adequately plead facts establishing fraud or injustice under *Bancec*, additional facts Plaintiffs have obtained during discovery establish alter ego liability on that basis, in addition to the basis of extensive control that the Court found was adequately pleaded in the complaints. For context, discovery was already nearly complete when the Court issued its order denying PDVH's motion to dismiss on February 21, 2025. The parties took discovery, including depositions, on all of the *Bancec* factors, including the "fraud or injustice" prong. Thus, addressing this issue on summary judgment will cause no surprise or unfair prejudice to PDVH.

### Evidence of Injustice Obtained in Discovery

Discovery in this case has unveiled facts that demonstrate that "recognition of [PDVH] as a separate entity would work a 'fraud or injustice'" because PDVSA has "avoid[ed its]

obligations by engaging in abuses of [PDVH's] corporate form." *EM Ltd. v. Banco Cent. De La Republica Argentina*, 800 F.3d 78, 95 (2d Cir. 2015). In fact, PDVSA acknowledges that funds currently available to PDVH and its subsidiaries could be used to satisfy PDVSA's creditors, but seeks to sequester that value in PDVH, supposedly beyond the reach of Plaintiffs, until PDVSA deems the circumstances more politically and financially propitious. Through this scheme, PDVSA has "intentionally structured its corporate relationships to 'confound its creditors.'" Dkt 126[1] at 19 (citing to *EM Ltd. II*, 800 F.3d at 95-96).

As shown in documents produced by PDVSA and PDVH and admitted in deposition testimony, the National Assembly ordered PDVH to *withhold* dividend payments to PDVSA in an attempt to deprive the Maduro regime of resources and to ensure that PDVSA could plead poverty to its creditors while accumulating significant value in its wholly-owned subsidiaries. Accordingly, PDVSA's creditors have been denied recourse to dividend payments from PDVSA's subsidiaries that would have flowed to PDVSA in the ordinary course.

At the same time, PDVSA and Venezuela have routinely tapped into PDVH assets for their own purposes. For example, prior to 2019, PDVSA relied on Citgo Petroleum Corporation, Inc. ("**Citgo**") and PDV USA, Inc. ("**PDV USA**") to access funds that were no longer obtainable through cash dividends, utilizing mechanisms including non-cash dividends and so-called "crude offsets."[2] PDVSA relied on PDVH's subsidiaries precisely because they were "not subject to the restrictions of dividends for CITGO Holding or CITGO Petroleum"[3]—restrictions that include offering excess cash flow to Citgo Petroleum's creditors before declaring dividends to PDVSA.[4] PDV USA was created for the express purpose of providing shareholder services to PDVSA,[5] including "logistical support services"[6] that ranged from paying for "rent, utilities, and furniture expenses for three apartments in New York City . . . for several Venezuelan citizens including a member of the Venezuelan delegation to the United Nations,"[7] to funding the "VZ Soccer team patronage," "Venezuelan UN Mission Support," and "VZ Minister of Tourism Photo Exhibit donation."[8] In total, PDV USA paid a substantial sum between 2014 and 2017 in "Shareholder Support" to PDVSA.[9]

---

[1] Docket entries refer to 23-cv-10766 unless otherwise noted.

[2] Coon Dep. Tr. 97:10-23.

[3] Shoemaker Dep. Tr. 164:4-7.

[4] *See* Coon Dep. Tr. 166:1-21 (describing ECF requirements noting "debt repayment was protected through these reserve accounts and other mechanisms").

[5] PDVH_Girard Street_000009346, at 383; *see also* Coon Dep. Tr. 16:9-12 ("Q : What does PDV USA do ? A : PDV USA was a US-based subsidiary of PDVH that provided services in the US at the direction of PDVSA and PDVH."); *id.* 75:14-16 ("PDV USA was an entity established to provide support for – logistics-type support for US activities of – of PDVSA.").

[6] Coon Dep. Tr. 47:12-14, 50:4-6; *see also* Shoemaker 30(b)(6) Dep. Tr. 212:7-25.

[7] Vera 30(b)(6) Dep. Tr. 130:5-23.

[8] PDVH_Girard Street_000009928.

[9] PDVH_Girard Street_000021297 . The precise dollar figure has been designated as highly confidential, and will be disclosed in Plaintiffs' Rule 56.1 Statement of Material Facts upon receipt of permission to file under seal.

2

Fernando Vera, as PDVH's corporate designee, explained PDV USA was compensated for these expenses paid on behalf of PDVSA through the following process: PDV USA "ha[s] a payable to PDVSA that requested services" and PDV USA "pay[s] the services," thereby "reduc[ing] the payable."[10] Gina Coon, the former Corporate Treasurer for Citgo, also explained that PDV USA "would be compensated through a noncash dividend, that it would pass from PDV USA to PDV Holding and from PDV Holding to PDVSA."[11]

PDVSA has continued this practice through to the present by selectively accessing its subsidiaries' funds when it serves its own interest or the political interests of the Interim Government of Venezuela. A June 2021 Citgo "Company Profile" boasts that "CITGO maintains a strong relationship with the U.S. Government," which "has consistently issued authorizations for U.S. persons to transact with CITGO" and granted it "dozens of such licenses."[12]

For example, PDVSA caused PDVH's subsidiaries, PDV Chalmette, LLC ("**PDV Chalmette**") and LDC Supply International, LLC ("**LDC**"), to enter into a series of transactions that require them to make payments to PDVSA Petróleo, S.A. ("**PPSA**")—the guarantor under the promissory notes agreements at issue in this case. Yet instead of allowing PPSA to use these funds to repay its creditors, PDVSA caused PDV Chalmette, LDC, and Citgo to pay directly for PDVSA's and Venezuela's legal fees, the monthly stipends of the members of the PDVSA Ad Hoc Board, and other expenses.

The debts owed by PDV Chalmette and LDC to PDVSA/PPSA, on which the current PDVSA Ad Hoc Board purportedly justifies its extraction of funds from PDVH's subsidiaries, exist only because of PDVSA's improper influence on the entities under prior administrations. PDV Chalmette, for example, held an equity interest in Chalmette Refining, LLC, which purchased crude oil and other products from PPSA.[13] On June 17, 2015, Chalmette Refining LLC was sold to PBF Holding Company LLC and, at the time, had substantial outstanding payables due to PDVSA affiliates.[14] As part of the sale, PDV Chalmette elected to assume its share of the outstanding payables Chalmette Refining owed to PPSA.[15] Similarly, LDC's outstanding payable due to PPSA—which totaled a substantial sum[16]—is attributable to a crude-supply arrangement orchestrated by PDVSA.[17]

---

[10] Vera 30(b)(6) Dep. 129:5-13.
[11] Coon Dep. Tr. 47:12-14, 50:4-6; *see also* Shoemaker 30(b)(6) Dep. Tr. 212:7-25.
[12] PDVH_Girard Street_000088850.
[13] Coon Dep. Tr. 73:25-74:18.
[14] PDVH_Girard Street_000020490 at 494; PDVH_Girard Street_000049334; PDVH_Girard Street_000020802 at -803. The precise dollar figure has been designated as highly confidential, and will be disclosed in Plaintiffs' Rule 56.1 Statement of Material Facts upon receipt of permission to file under seal.
[15] PDVH_20797 at 797-798; Shoemaker 150:20-151:18; PDVH_Girard Street_000107515.
[16] PDVSA_0004679 at -678. The precise dollar figure has been designated as highly confidential, and will be disclosed in Plaintiffs' Rule 56.1 Statement of Material Facts upon receipt of permission to file under seal.
[17] PDVH_Girard Street_000013026; PDVH_Girard Street_000013024.

PDVSA has also caused PDVH and its subsidiaries to request OFAC licenses for these transactions, while at the same time asking the U.S. Government to keep in place sanctions that would prevent certain creditors from enforcing against PDVH until after political regime change occurred in Venezuela. PDVSA, through José Ignacio Hernández, the Special Attorney General for the Interim Government of Venezuela, engaged in settlement discussions with the 2020 PDVSA bondholders beginning in April 2019. Mr. Hernández, from his personal email address, engaged in direct discussions with attorneys at the U.S. Department of the Treasury in March and early April 2019 regarding the use of Citgo's funds to pay the interest payment due to the 2020 PDVSA bondholders in April 2019, and regarding the OFAC license application and the Treasury attorneys' meeting with OFAC about the license.[18] Mr. Hernández assured the 2020 bondholders that "Guaidó's Government already initiated all the processes in Venezuela and the U.S." to ensure PDVSA's upcoming interest payment due on the 2020 PDVSA bonds, including "initiat[ing] the preliminary actions that will allow the National Assembly to authorize the payment, including the request of the OFAC license."[19]

PDVSA sought and was granted licenses from OFAC to make an interest payment on the 2020 PDVSA Bonds and fund the PDVSA Ad Hoc Boards litigation expenses using funds owed by LDC and PDV Chalmette to PPSA.[20] But the debts owed by LDC and PDV Chalmette to PPSA, on which the payments were justified, only existed because of PDVSA's improper influence on the entities under prior administrations, as discussed above.

Although Mr. Hernández clarified in his negotiations with the 2020 PDVSA bondholders that the April 2019 interest payment "was possible because PDVSA had resources available in a blocked account . . . that were used completely for that purpose," and, going forward, the Ad Hoc Board could not "make any more piecemeal payments,"[21] PDVSA has nonetheless sought—and been granted—three additional licenses from OFAC authorizing the use of its subsidiaries' funds.

For example, on August 9, 2019, LDC and the PDVSA Ad Hoc Board requested and received an OFAC license.[22] And on March 6, 2020, PDVSA was granted a license to use a substantial sum in funds held by PDV Chalmette, and on November 5, 2020, additional funds held by LDC, for legal and related expenses of the Ad Hoc Board.[23]

---

[18] PDVSA_0035805.
[19] PDVSA_0046264 at -46271.
[20] PDVSA_0004674.
[21] PDVSA_0046264 at -265.
[22] PDVSA_0004674 at -676. The details of the license have been designated as highly confidential, and will be disclosed in Plaintiffs' Rule 56.1 Statement of Material Facts upon receipt of permission to file under seal.
[23] PDVH_Girard Street_000107680 at -683. The precise dollar figures have been designated as highly confidential, and will be disclosed in Plaintiffs' Rule 56.1 Statement of Material Facts upon receipt of permission to file under seal.

Furthermore, evidence designated as highly confidential regarding the financial details of potential settlements with the PDVSA 2020 bondholders considered in the summer of 2019 demonstrates that the PDVSA Ad Hoc board considered the pros and cons of accessing equity at each level—*i.e.*, PDVH, Citgo Holding, and Citgo—to settle the debt and release the lien, demonstrating that the Ad Hoc board understood it could access PDVH's assets when politically expedient, and otherwise shield them from PDVSA's creditors.

Neither PDVH nor its subsidiaries benefit from this scheme of intercompany transactions, which relies on treating PDVH as a separate entity when expedient for frustrating creditors and then ignoring that distinction when PDVSA seeks to use its subsidiary's resources for its own purposes.

Discovery has also shown that PDVSA's decision to accumulate billions of dollars of value at the PDVH level is part of a plan designed to exert political pressure over the Maduro regime at the expense of PDVSA's creditors. In a letter to OFAC on July 6, 2023, PDVSA acknowledged that "the AHB is responsible for preserving and protecting PDVSA's assets from dissipation, including at the hands of the illegitimate Maduro regime [and is] . . . tasked with navigating the return of PDVSA to good standing in the international business community following decades of mismanagement at the hands of rogue and corrupt actors." Mr. Medina testified that one of the Ad Hoc Board's goals is to "[p]rotect PDVSA's assets up until there is a change in Venezuela," and admitted that it is the Ad Hoc Board's position that "CITGO is an important asset for Venezuela to own after the Maduro regime is gone." Similarly, PDVSA confirmed in a recent statement that Citgo, based on its robust financial performance in recent years, is favorably positioned to assist with "a potential democratic transition in Venezuela, in which it could be safeguarded within the framework of a comprehensive restructuring of PDVSA's debt," but that "[t]he only obstacle to this scenario remains the Maduro regime's obstinate refusal to allow a peaceful resolution to Venezuela's political crisis."

In a letter to OFAC designated as highly confidential, however, PDVSA acknowledged that its assets in the United States may be used to satisfy its creditors, and made specific requests which will be disclosed in Plaintiffs' Rule 56.1 Statement of Material Facts upon receipt of permission to file under seal.[24] Mr. Julian Cardenas, PDVSA's Rule 30(b)(6) witness, confirmed this understanding in testimony designated as highly confidential which will be disclosed in Plaintiffs' Rule 56.1 Statement of Material Facts upon receipt of permission to file under seal.[25]

Accordingly, Plaintiffs have discovered facts that support their claims under the "fraud or injustice" prong of *Bancec* far beyond the applicable pleading standard, proving that PDVSA is selectively invoking PDVH's separate corporate form in order to frustrate creditors.

---

[24] PDVSA_0005656.
[25] Cardenas 30(b)(6) Dep. Tr. at 52:2-53:1.

**Plaintiffs Propose to Address Injustice in Summary Judgment Briefing**

Procedurally, Plaintiffs propose the following. In their Local Civil Rule 56.1 Statement of Material Facts on Motion for Summary Judgment, Plaintiffs will include all material facts as to which they contend there is no genuine issue to be tried. Some of these facts (some of which are summarized above and will be included in greater detail in Plaintiffs' summary judgment briefing[26]) support piercing the veil on the basis of the "fraud or injustice" prong of *Bancec*. These are facts that were uncovered during the course of discovery and that will establish as a matter of law that both prongs of *Bancec* are met in this case.

The complaints need not be amended before this argument is raised on summary judgment, for at least three reasons. *First*, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and ***may be revised at any time before the entry of a judgment*** adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b) (emphasis added). Accordingly, the Court's consideration of this issue is not limited by the order of dismissal, and if presented with evidence that supports piercing the veil under *Bancec*, the Court is free to consider that evidence on summary judgment and enter judgment as a matter of law. *See, e.g., Dieterle Dellums v. Powell*, 566 F.2d 231, 234 (D.C. Cir. 1977) (approving under Rule 54(b) the district court modifying its earlier dismissal order when entering judgment).

*Second*, the law is clear that "[t]he law of the case doctrine . . . does not preclude [the court] from reconsidering issues on summary judgment that have initially been raised in the context of a motion to dismiss." *Nobel Ins. Co. v. City of New York*, No. 00-CV-1328 KMK, 2006 WL 2848121, at *4 (S.D.N.Y. Sept. 29, 2006). *See also, e.g.*, *RSL Commc'ns, PLC v. Bildirci*, No. 04 Civ. 5217(RJS), 2009 WL 454136, at *2 (S.D.N.Y. Feb. 23, 2009) (same); *McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.3d 508, 513 (6th Cir. 2000) (court's "holding on a motion to dismiss does not establish the law of the case for purposes of summary judgment, when the complaint has been supplemented by discovery"); *Buddenberg v. Est. of Weisdack*, 711 F. Supp. 3d 712, 771–72 (N.D. Ohio 2024) ("[D]iscovery proved some facts alleged in [the] complaint but also surfaced others that were not pled or not previously known and, therefore, unaccounted for in the rulings made at the pleading stage . . . [W]here discovery supplements the allegations of the pleadings, the law-of-the-case doctrine does not bar the Court's consideration on summary judgment of issues decided at the motion to dismiss stage.").

*Third*, Rule 15(b) of the Federal Rules of Civil Procedure contemplates situations where it may be appropriate to conform the pleadings to the evidence. This is the situation here. Although the Court found that the complaints did not sufficiently allege the "fraud or injustice" prong, if the evidence supports such a finding, then the Court has the power to conform the pleadings to the evidence. Indeed, as the rule provides: "A party may move—at any time, even

---

[26] For avoidance of doubt, Plaintiffs' summary of evidence for the purposes of this letter is not intended to be comprehensive, and Plaintiffs expressly reserve the right to cite additional evidence in support of the "fraud or injustice" prong in briefing on their forthcoming motion for summary judgment.

after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue." Fed. R. Civ. P. 15(b). As Wright & Miller explains, Rule 15(b) is "[i]ntended to promote the objective of deciding cases on their merits rather than in terms of the relative pleading skills of counsel or on the basis of a statement of the claim or defense that was made at a preliminary point in the action and later proves to be erroneous. Consequently, courts should interpret subdivision (b) liberally and permit an amendment whenever doing so will effectuate the underlying purpose of the rule." 6A Fed. Prac. & Proc. Civ. § 1491 (3d ed.). Accordingly, from Plaintiffs' perspective, there is no need to amend the complaints now when the Court can fully consider the evidence on summary judgment and, if amendment of the pleadings is necessary, either grant summary judgment and conform the pleadings; or permit the pleadings to be amended prior to the trial. *See* Fed. R. Civ. P. 15(a).

Respectfully submitted,

By: /s/ Michael J. Baratz

Evan Glassman
**STEPTOE LLP**
1114 Avenue of the Americas, 35th Floor
New York, NY 10036
Tel: (212) 506-3900
Fax: (212) 506-3950
eglassman@steptoe.com

Michael J. Baratz (*pro hac vice*)
Molly Bruder Fox (*pro hac vice*)
Emma Marshak (*pro hac vice*)
**STEPTOE LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
mbaratz@steptoe.com
mbfox@steptoe.com
emarshak@steptoe.com

7

>Mark W. Friedman
>William H. Taft V
>Carl Micarelli
>Juan Fandiño
>**DEBEVOISE & PLIMPTON LLP**
>66 Hudson Boulevard
>New York, NY 10001
>(212) 909-6000
>mwfriedman@debevoise.com
>whtaft@debevoise.com
>cmicarelli@debevoise.com
>jfandino@debevoise.com
>
>*Counsel to Plaintiffs G&A Strategic Investments I LLC, G&A Strategic Investments II LLC, G&A Strategic Investments III LLC, G&A Strategic Investments IV LLC, G&A Strategic Investments V LLC, G&A Strategic Investments VI LLC, G&A Strategic Investments VII LLC, and Girard Street Investment Holdings LLC*

cc: Chambers (via rakoffnysdchambers@nysd.uscourts.gov)
    Counsel of Record (via ECF and email)